Lorna L. ARNDT, Appellant,

v.

STATE of Alaska, DEPARTMENT OF
LABOR, Appellee.

No. 3578.

Supreme Court of Alaska.

Sept. 22, 1978.

David B. Snyder and Matthew D. Jamin, Alaska Legal Services Corporation, Kodiak, for appellant.

David T. LeBlond, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR, BURKE, and MATTHEWS, Justices.

## OPINION

CONNOR, Justice.

Lorna Arndt appeals from a judgment entered by the superior court affirming the decision of the Alaska Department of Labor denying her unemployment benefits.

In January, 1976, after her work as a daytime janitor at the United States Coast Guard base in Kodiak had terminated, Arndt filed her initial claim for unemployment benefits at the Kodiak Employment Center. On March 23, the local employment center found Arndt disqualified to receive benefits for a period of one week, effective March 7, pursuant to AS 23.20.-380(1).[1] Arndt had been referred to the Alexander Janitorial Service where she told the employer that she was not able to work during the evening. Based on a finding that Arndt was doing volunteer work at a bowling tournament, during the evening hours, the local office concluded that Arndt's reason for not working was "personal" rather than compelling.

Arndt appealed the decision of the local office through a letter stating that she had gone to the interview with Alexander Janitorial Service and that when she appeared for work on the designated date she found the job already completed. The appeal referee, asserting by mail that "workload requirements do not permit referee travel to your location to afford you the opportunity of a hearing," sent Arndt a questionaire requesting further information about the claim. The inquiry focused primarily on Arndt's availability for work, the reasons why she would not accept work as a janitor in the evenings, and the circumstances regarding the job referral to Alexander Janitorial Service.

Arndt replied definitively that her unwillingness to work in the nighttime was not limited solely to the contested week of March 7–13, but applied to all weeks. She stated her reason for restricting work to daytime as: "I am the only parent with 2 small school age children and must be with them at nights as I am on Welfare and the Social Worker says I must not neglect my children and their school home work."[2]

Arndt also clarified her presence at the bowling alley on the evening when it was alleged that she had been doing volunteer work there. She explained that after her interview with Alexander Janitorial Service she had stopped briefly at the bowling alley to assist in placing two late arrivals into private housing.[3]

1. AS 23.20.380(1) states:
   *Disqualification for benefits.* An insured worker is disqualified for a waiting-week credit or benefits for a week of his unemployment if with respect to the week the department finds that
   (1) he was not able to work or was not available for suitable work for the week; an insured worker may not be considered ineligible for receipt of unemployment benefits for a week because of failure to comply with the provisions of this subsection if
   (A) he is unable to work because of an illness or disability; or
   (B) he resides in the state and is not available for work because of his noncommercial fishing and hunting necessary for the survival of himself and his dependents; and

(C) the condition described in (A) or (B) of this subsection occurs during an uninterrupted period of unemployment following a week for which he had filed a compensable claim and no work has been offered him for a part of that week which would have been suitable before the beginning of the fishing, hunting, illness, or disability;

2. In a subsequent appeal to the Commissioner, Arndt also explained that Kodiak does not have a nighttime "day care center" for which the state would pay the charges.

3. Coincidentally, the private housing involved was that of the manager of the Kodiak employment office.

The appeal referee affirmed the local office decision, denying benefits effective March 7, but modified the duration of the disability to last "until the disqualifying conditions no longer exist." His decision to extend the disqualified period did not rest on the allegations pertaining to the bowling alley incident but upon a finding that:

"The evidence established that the claimant is not fully available for suitable work. Work as a janitor requires that she be available for all shifts. By limiting her availability to day shift only she is restricting her availability to such a substantial degree that she cannot be considered fully available for suitable work."

In response to a timely appeal, the Commissioner of Labor affirmed the referee's entire decision, finding Arndt "unavailable for work as defined for Unemployment Insurance purposes."

The superior court, affirming the Commissioner's decision, held in its memorandum opinion that "there was a reasonable basis for the Department's decision" and that "one who restricts the hours of availability based upon domestic considerations is not eligible for benefits." Arndt's appeal here challenges both the review standard and the legal theory applied by the superior court in upholding the denial of her unemployment benefits.

Alaska has a comprehensive program which promotes employment security through the maintenance of public employment offices and provides for the payment of compensation to unemployed individuals. AS 23.20.005—AS 23.20.535. However, eligibility for unemployment benefits is conditioned upon an individual being genuinely attached to the labor force. An individual can satisfy this condition by remaining "available for suitable work"[4] and by not refusing, without good cause, to apply for or to accept suitable work.[5] In the instant case the issue is whether an individual who restricts her hours of availability because of domestic considerations is "unavailable for suitable work" so as to disqualify her for unemployment benefits.

Appellant Arndt limited her availability to the day shift only. She contends that eligibility for unemployment benefits does not require one to be available for *all* work,

4. AS 23.20.385 defines suitable work as follows:

(a) No work may be considered suitable and benefits shall not be denied under a provision of this chapter to an otherwise eligible individual for refusing to accept new work under any of the following conditions:

(1) if the position offered is vacant due directly to a strike, lockout, or other labor dispute;

(2) if the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality;

(3) if, as a condition of being employed, the individual would be required to join a company union or to resign from or refrain from joining a bona fide labor organization.

(b) In determining whether work is suitable for a claimant and in determining the existence of good cause for leaving or refusing work, the department shall, in addition to determining the existence of any of the conditions specified in (a) of this section, consider the degree of risk to the claimant's health, safety, and morals, his physical fitness for the work, his prior training and experience, his prior earnings, the length of his unemployment, his prospects for obtaining work at his highest skill, the distance of the available work from his residence, his prospects for obtaining local work, and other factors which influence a reasonably prudent person in the claimant's circumstances.

(c) This section shall be given the same meaning as the Secretary of Labor gives to § 3304(a)(5) of the Internal Revenue Code of 1954.

5. In addition to AS 23.20.380(1) set out in note 1, supra, the Employment Security Act further provides that a worker is disqualified if:

he has failed without good cause either to apply for available suitable work to which he was referred by the employment office, or to accept suitable work offered him; in this case he shall be disqualified for the week in which the failure occurred and for the five weeks of continuous unemployment immediately following that week;

AS 23.20.380(4).

only for suitable work.[6] Arndt maintains that night shift work is not suitable for her because her unwillingness to work at night is compelled by her responsibility as sole custodial parent. She points out that the determinations of whether work is "suitable" and whether a person has "good cause" for refusing work require consideration of various factors including those "which influence a reasonably prudent person in the claimant's circumstances." Arndt's argument is that because parental responsibility is a factor which would influence a reasonably prudent person, she has "good cause" for refusing night shift work and, therefore, night shift is not "suitable" work for her.

The Department of Labor maintains that suitability is a work-related concept unaffected by solely domestic considerations. The Department contends that Arndt is not fully available for suitable work due to her prospective refusal of other than day shift work. Furthermore, the Department argues that by limiting her availability, Arndt has reduced the labor market for her services; that by being unavailable for a "substantial amount" of suitable work she has detached herself from the labor force; and that her limitation unduly restricts her chances of obtaining suitable employment.

In *Sanchez v. Unemployment Insurance Appeals Board,* 141 Cal.App. 146, 569 P.2d 740 (1977), the California Supreme Court was confronted with facts remarkably similar to those in the present case. In *Sanchez* both the administrative agency and the trial court denied the unemployment benefit claim of a previously employed waitress who refused weekend work in order to care for her four year old son. The California statute required an individual to be "able to work and available for work that week."[7] The administrative appeal referee declared

that to be "available" a claimant "cannot impose restrictions on suitable work, such as limitations on hours, days, shifts or wages, which will materially reduce the possibility of obtaining employment", and that Sanchez' "restriction substantially reduces her attachment to the labor market." *Id.* at 743. Both the agency and the trial court upheld the referee's decision.

Reversing on appeal, the *Sanchez* court reasoned that claimants must be allowed to refuse, without the risk of disqualification, work which is either unsuitable or which the claimant has other good cause to refuse. *Id.* at 745–46. However, the court went on to explain, mere willingness to accept all such "nonrefusable" work is not sufficient to satisfy the availability requirement. Because availability also entails accessibility to work for which there is some demand, further inquiry is necessary to insure that the claimant remains available for work for which there is a substantial field of potential employers. *Id.* at 746–47.

We are persuaded by the rationale of *Sanchez* and believe that the two-fold test for determining availability for work should be followed. The test requires "(1) that an individual claimant be willing to accept suitable work which he has no good cause for refusing and (2) that the claimant thereby make himself available to a substantial field of employment". (footnote omitted) *Id.* at 748.

Applying this test, the first question raised is whether the Department properly considered the reasonableness of Arndt's refusal to accept other than day shift employment. It appears from the record that the Department did not specifically determine whether Arndt's parental responsibility would be considered "good cause" for refusing nighttime employment. If it had

---

**6.** Recently in *State, Department of Labor v. Boucher and Spanos,* 581 P.2d 660 (Alaska, 1978), we held that a claimant must be available for full-time work in order to qualify for unemployment, but that decision did not consider whether one must also be available for all shifts.

**7.** Cal. Unemp. Ins. Code § 1253(c) (West). At the time the claim arose "suitable employment" was defined by § 1258 which included, *inter alia,* language nearly identical to that of AS 23.20.385(b) set out in note 4, *supra.*

determined that parental duty was a "good cause" for refusal, it would follow that the excluded work was "unsuitable" and the claimant should be entitled to benefits if found to be otherwise eligible. We agree with the California court's decision that it is proper to consider parental duties as an allowable restriction on availability.

"The responsibilities our laws place on parents, and the importance to their children and society that those duties be discharged, mandate that the 'good cause' concept not be defined so narrowly as to compel unemployed parents who remain available to a significant labor market to fulfill their parental responsibilities only upon pain of losing their unemployment benefits.

"We conclude that a claimant who is parent or guardian of a minor has 'good cause' for refusing employment which conflicts with parental activities reasonably necessary for the care or education of the minor if there exist no reasonable alternative means of discharging those responsibilities. Indeed, 'It is difficult to imagine a better cause for rejection of employment. . . .'" (footnote and citations omitted)

*Sanchez, supra,* at 750. The question of the reasonableness of Arndt's refusal of night shift work must be remanded for determination in accordance with our holding that it is proper to consider the domestic situation in evaluating availability.

The second part of the test requires information about job market conditions which would be within the specialized knowledge and particular expertise of the Labor Department. Since the Department's expertise is involved in deciding whether a person is still available to a "substantial field of employment", we use the "reasonable basis" standard of review.[8] However, in the instant case we find that the record as a whole does not contain substantial evidence [9] about the job market in Kodiak to convince us that the Department's conclusion rests on a "reasonable basis". Therefore, we cannot agree that Arndt's self imposed limitation made her unavailable to such a substantial degree that she cannot be considered fully available for suitable work. The Department of Labor has particular knowledge and expertise with regard to local economic conditions and employment markets. Accordingly, where a claimant has shown she is available for suitable work which she has no good cause for refusing, the Department shall have the burden of proving, if it so believes, that this availability does not extend to a sufficiently "substantial field of employment." [10]

The decision of the superior court is REVERSED with directions to REMAND the case to the Department of Labor for further proceedings in light of this opinion.

---

8. Our prior cases reviewing administrative decisions involving questions of law have recognized two applicable standards. The "reasonable basis" test is appropriate in determinations which involve the formulation of fundamental policy or require the particularized expertise and experience of the administrative personnel. When the court is presented with this type of question, we will defer to the administrative decision, inquiring only whether it has a reasonable basis. However, if the matter comes within the court's special competency, such as where the issues turn on statutory interpretation or involve other analyses of legal relationships about which courts have specialized knowledge and experience, the "substitution of

judgment" standard is used. *Union Oil Co. of Cal. v. Dept. of Revenue,* 560 P.2d 21, 23 (Alaska 1977), *Kelly v. Zamarello,* 486 P.2d 906, 916 (Alaska 1971).

9. *See* AS 44.62.570.

10. In determining the extent of a claimant's employment market, the Department should consider all employment possibilities for which she is capable and available. It is unclear from the record whether appellant Arndt would have refused other employment or whether the Department adequately considered her willingness to accept other than janitorial work.