**DRESSER INDUSTRIES, INC.,**
**Appellant,**

v.

**ALASKA DEPARTMENT OF LABOR, Appellee.**

**No. 5625.**

Supreme Court of Alaska.

Sept. 18, 1981.

John K. Norman and Wev W. Shea, Hartig, Rhodes, Norman & Mahoney, Anchor-

age, and A. J. Harper II and Jeffrey S. Kühn, Fulbright & Jaworski, Houston, Tex., for appellant.

Elizabeth Page Kennedy, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

---

1. This regulation reads:

(d) The following are not acceptable methods of complying with the payment of overtime provisions of AS 23.10.060:

. . . . .

(3) flex-time or flexitime plans established under 29 C.F.R. 778.114 providing a fixed salary for fluctuating hours up to a predetermined maximum number of hours in a workweek.

The federal regulation referred to, 29 C.F.R. 778.114, reads as follows:

§ 778.114 *Fixed salary for fluctuating hours.*

(a) An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

## OPINION

RABINOWITZ, Chief Justice.

This is an appeal from a summary judgment granted by the superior court. Its sole issue is the validity of 8 AAC 15.-100(d)(3),[1] a regulation promulgated by the Department of Labor which prohibits the "flexible work week" (FWW), purportedly under the authority of the Alaska Wage and Hour Act. The superior court conclud-

(b) The application of the principles above stated may be illustrated by the case of an employee whose hours of work do not customarily follow a regular schedule but vary from week to week, whose overtime work is never in excess of 50 hours in a workweek, and whose salary of $250 a week is paid with the understanding that it constitutes his compensation, except for overtime premiums, for whatever hours are worked in the workweek. If during the course of 4 weeks this employee works 40, 44, 50, and 48 hours, his regular hourly rate of pay in each of these weeks is approximately $6.25, $5.68, $5, and $5.21, respectively. Since the employee has already received straight-time compensation on a salary basis for all hours worked, only additional half-time pay is due. For the first week the employee is entitled to be paid $250; for the second week $261.36 ($250 plus 4 hours at $2.84, or 40 hours at $5.68 plus 4 hours at $8.52); for the third week $275 ($250 plus 10 hours at $2.50, or 40 hours at $5 plus 10 hours at $7.50); for the fourth week approximately $270.88 ($250 plus 8 hours at $2.61 or 40 hours at $5.21 plus 8 hours at $7.82).

(c) The 'fluctuating workweek' method of overtime payment may not be used unless the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the Act, and unless the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which the full schedule of hours is not worked. Typically, such salaries are paid to employees who do not customarily work a regular schedule of hours and are in amounts agreed on by the parties as adequate straight-time compensation for long workweeks as well as short ones, under the circumstances of the employment as a whole. Where all the legal prerequisites for use of the 'fluctuating workweek' method of overtime payment are present, the Act, in requiring that 'not less than' the prescribed premium of 50 percent for overtime hours worked be paid, does not prohibit paying more. On the other hand, where all the facts indicate that an employee is being paid for his over-

ed the regulation was valid, and Dresser Industries (Dresser) has appealed. We affirm.

The case was presented to the superior court on the basis of the parties' "Stipulations of facts, issues, and procedure," providing in part:

1. Dresser Industries, Inc. is doing business in the State of Alaska and is subject to the jurisdiction of this court.

2. The person on whose behalf the action has been instituted is Clyde Woody (herein claimant), who has assigned his rights to the Department of Labor pursuant to AS 23.05.220.

3. The Department of Labor is the proper party plaintiff to bring this suit under AS 23.05.230 and suit has been timely and properly instituted.

4. The court has jurisdiction of the subject matter and the parties.

5. This action arises under the provisions of the Alaska Wage and Hour law (AS 23.10.050 *et seq.*) and the regulations of the Department of Labor promulgated thereunder (8 AAC 15.100).

6. The interpretative regulation at issue was properly promulgated in accordance with the Alaska Administrative Procedure Act (AS 44.62).

7. Claimant is due the sum of $3,956.76 if the position of plaintiff is sustained and is not due any monies if the position of defendant is sustained.

8. This case is ripe for adjudication on the stipulated facts and issues and the parties agree this stipulation shall constitute cross-motions for summary judgment.

9. The predicates which served as the Administrator's basis in adopting the challenged regulation were:

(A) The 'fluctuating work week' is not applicable under the Alaska Act because,

(1) AS 23.05.160 requires an employee to be told of his 'rate of pay' at the time of hire and of any changes therein before payday; and

(2) AS 23.10.060 requires that employers have to pay overtime for hours worked over eight (8) hours per day, even if less than forty (40) hours per week are worked, and this is to the employer's detriment.

Dresser presented two arguments in support of its contention that 8 AAC 15.-100(d)(3) is invalid. It asserted, first, that the definition of "regular rate of pay" in the federal regulations, which countenances use of the FWW, *see* note 1 *supra*, is binding upon the State Wage and Hour Division under two statutory provisions: section 8(d) of the Statehood Act[2] and the Alaska Wage and Hour Act itself, specifically AS 23.10.-050[3] and AS 23.10.145.[4] Second, Dresser

time hours at a rate no greater than that which he receives for nonovertime hours, compliance with the Act cannot be rested on any application of the fluctuating workweek overtime formula.

2. The entire text of section 8(d) of the Statehood Act reads:

(d) Upon admission of the State of Alaska into the Union as herein provided, all of the Territorial laws then in force in the Territory of Alaska shall be and continue in full force and effect throughout said State except as modified or changed by this Act, or by the constitution of the State, or as thereafter modified or changed by the legislature of the State. All of the laws of the United States shall have the same force and effect within said State as elsewhere within the United States. As used in this paragraph, the term 'Territorial laws' includes (in addition to laws enacted by the Territorial Legislature of Alaska) all laws or parts thereof enacted by the

Congress the validity of which is dependent solely upon the authority of the Congress to provide for the government of Alaska prior to the admission of the State of Alaska into the Union, and the term 'laws of the United States' includes all laws or parts thereof enacted by the Congress that (1) apply to or within Alaska at the time of the admission of the State of Alaska into the Union, (2) are not 'Territorial laws' as defined in this paragraph, and (3) are not in conflict with any other provisions of this Act.

Alaska Statehood Act, P.L. 85-508, § 8(d).

3. AS 23.10.050 reads, in relevant part: "It is the public policy of the state to ... (2) safeguard existing minimum wage and overtime compensation standards ...."

4. AS 23.10.145 reads:

*Definitions.* Terms used in §§ 50–150 of this chapter shall be defined, where applica-

argued that even if the State Wage and Hour Division was authorized to promulgate 28 AAC 15.100(d)(3), the regulation is inconsistent with the state Wage and Hour Act and unreasonable and arbitrary, and thus cannot withstand judicial review.

### A. Carry-over of federal law.

It is undisputed that the FWW is sanctioned under federal wage and hour law. *See Overnight Motor Transport Co., Inc. v. Missel,* 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942). Early federal regulations specifically endorsed its use, under the provisions defining "regular rate of pay." 29 C.F.R. 778.3 (1950).

Dresser asserts that this federal definition of "regular rate of pay" carried over into state law because no change in that definition was made by the state legislature. Pointing to the section of the Statehood Act which continued in full force and effect all Territorial laws except as modified or changed by the Statehood Act itself, by the state constitution, or by the legislature of the new state, Dresser argues that coverage, meaning, and interpretation of the Alaska Act should parallel that of the Fair Labor Standards Act absent a clear legislative directive to the contrary. Dresser's position seems to be that although the state can choose to diverge from federal law in this area, it should only be able to do so by virtue of legislative enactment, and that in this action the burden is on the state to show that statutory provisions passed by the state legislature mandated issuance of the regulation at issue. Otherwise, Dresser

contends, the state agency could not, merely by issuing regulations, overrule the treatment of the FWW under federal/Territorial law, carried over into state law by the Statehood Act.

■ We do not find this argument persuasive. We think that the text of section 8(d) of the Statehood Act made it clear that federal legislative enactments were to be carried over unless overruled by the state constitution or the state legislature.[5] We do not interpret it as having automatically incorporated and maintained federal case law or, as Dresser argues, administrative law, unless and until changed by the legislature. This court has not held itself bound by federal judicial rulings entered prior to the date of statehood, regardless of whether or not the state legislature has acted in a given area.[6] We think it would be equally awkward to hold state agencies bound by federal regulations extant as of statehood. Such a result would unduly restrict state agencies and inordinately burden the legislature.

■ Nor are we convinced that the terms of the Alaska Wage and Hour Act evince an intent to bind the State Wage and Hour Division to federal regulatory definitions. It is true that AS 23.10.050 manifests an intent to safeguard "existing" minimum wage and overtime standards, but we cannot give this the strained reading of having petrified wage and hour law as of the time of its enactment. That provision is an ex-

ble, as they are defined in the federal Fair Labor Standards Act of 1938, as amended, or the regulations adopted under it.

5. The language of section 8(d), *see* note 2 *supra,* indicates that its primary concern was with "laws enacted by Congress."

6. *See, e. g., Howarth v. Pfeifer,* 443 P.2d 39, 44 (Alaska 1968) ("What may be considered a just disposition of a dispute at one stage of history may not be the same at another stage, considering changing social, economic, and other conditions of society.... Thus, we hold under the principles we have discussed in this opinion that one may now maintain an action for negligent misrepresentation, even though that may not have been the case under the common law

in years gone by."); *In re Mackay,* 416 P.2d 823, 837 (Alaska 1964) ("We do not agree with the respondent's contention that there should be read into section 8(d) of the Alaska Statehood Act an intent to limit the powers of the Supreme Court of Alaska.... Congress cannot limit this court's power to discipline Alaskan lawyers either directly or by continuing in force the provision of a territorial statute claimed by the respondent to have that effect."). *Cf. Surina v. Buckalew,* 629 P.2d 969 (Alaska 1981) (prosecutor's non-statutorily based promise of immunity in return for testimony is binding under Alaska Constitution regardless of federal rule).

pression of general policy, not a specific prohibition of change.

■ Dresser's next argument is based upon AS 23.10.145, which indicates that "[t]erms used in [the Alaska Wage and Hour Act] shall be defined, where applicable, as they are defined in the federal Fair Labor Standards Act of 1938, as amended, *or the regulations adopted under it.*" On its face, this provision presents a strong indication that the federal definition of "regular rate of pay" is binding on the State Wage and Hours Division. However, two other statutory provisions undercut this position. AS 23.10.085(b) provides that the state regulations to be issued by the Wage and Hour Division "may ... define terms used in [the Alaska Wage and Hour Act]"; [7] and AS 23.10.095 provides that the state Commissioner of Labor "may adopt regulations and interpretations which are made by the administrator of the Wage and Hour Division of the federal Department of La-

bor and which are not inconsistent with [the Alaska Wage and Hour Act]." [8]

We must interpret the statutory scheme as a whole and in such a way that separate provisions do not conflict.[9] Here, we agree with the state's argument that AS 23.10.145 directs the courts to apply federal regulatory definitions "where applicable," and that such definitions are "applicable" only when the state director of the Wage and Hour Division and the Commissioner of Labor have refrained from defining terms in the state regulations, pursuant to their discretionary authority under AS 23.10.085 and 23.10.095.[10] We reject Dresser's contention that AS 23.10.145 is a mandatory directive to both courts and agencies, to be overruled only by the legislature. Such an interpretation would substantially nullify AS 23.10.085 and 23.10.095.

■ For the above reasons, we conclude that the Director was authorized to promulgate 8 AAC 15.100(d)(3).

7. AS 23.10.085 reads:

*Scope of administrative regulations.* (a) The director may issue, amend or rescind such administrative regulations not inconsistent with the purposes and provisions of §§ 50–150 of this chapter which are necessary for the administration of §§ 50–150 of this chapter.

(b) The regulations may, without limiting the generality of (a) of this section, define terms used in §§ 50–150 of this chapter, and the restriction or prohibition of industrial homework or of the other acts or practices which the director finds appropriate to carry out the purpose of §§ 50–150 of this chapter, or to prevent the circumvention or evasion of §§ 50-150 of this chapter.

(c) The regulations may permit deductions by an employer from the minimum wage applicable under §§ 50–150 of this chapter to his employees for the reasonable cost, as determined by the director on an occupation basis, of furnishing board or lodging if board or lodging is customarily furnished by the employer and used by the employee.

8. As 23.10.095 reads:

*Adoption of federal regulations.* The commissioner may adopt regulations and interpretations which are made by the administrator of the Wage and Hour Division of the federal Department of Labor and which are not inconsistent with §§ 50–150 of this chapter.

9. *See In re Estate of Hutchinson*, 577 P.2d 1074, 1075 (Alaska 1978); *State v. City of Anchorage*, 513 P.2d 1104, 1110 (Alaska 1973).

10. This interpretation is consistent with our ruling in *McGinnis v. Stevens*, 543 P.2d 1221, 1238–39 (Alaska 1975), where we held that a prison inmate was not entitled to the minimum wage for institutional jobs. We relied *partially* on AS 23.10.065:

AS 23.10.065 is based on the federal Fair Labor Standards Act of 1938 and the terms used in the Alaska statute are defined in the same way as in the federal act. A prisoner is not an 'employee' of the state under the federal act, and therefore is not so by virtue of AS 23.10.065. Moreover, even were we to regard the inmates here as employees, state employees are excluded, by virtue of AS 23.10.055(5), from the operation of the statute. Finally, the legislative history indicates that Congress did not intend the Fair Labor Standards Act to cover prisoners, and we find no indication that the state statute was not meant to have parallel 'non-coverage.' We simply cannot say that the distinction between prisoners in institutions and free citizens on the labor market is suspect.

*Id.* (footnotes omitted). *McGinnis* did not involve a state regulation explicitly rejecting the FLSA rule on prisoners, however, so our application of the federal definition there was in accordance with our present holding.

### B. *Validity of 8 AAC 15.100(d)(3).*

The parties have attempted to stipulate to two matters affecting the scope of this court's review: (1) that 8 AAC 15.100(d)(3) is an interpretative regulation, and thus subject to review under the independent judgment standard; and (2) that the sole statutory provisions which form the basis for the regulation are AS 23.05.160 and AS 23.10.060.

■ Although the parties' efforts toward simplifying the issues in a case are always appreciated, stipulations as to the law are not binding upon the court. "Counsel ... may agree as to the facts, but they cannot control this court by stipulation as to the sole or any question of law to be determined under them." *San Francisco Lumber Co. v. Bibb*, 139 Cal. 325, 73 P. 864, 865 (1903).[11] This rule regarding stipulations of law is particularly appropriate where, as here, the case involves a matter of public policy. *See generally* Annot., 92 A.L.R. 663, 666 (1934). We think these considerations require us to look beyond the parties' stipulation in our analysis of the applicable law.

■ We conclude that the regulation here is "quasi-legislative". In *Kelly v. Zamarello*, 486 P.2d 906, 909–11 (Alaska 1971) (footnotes omitted), we distinguished between quasi-legislative and interpretative rule-making:

> Professor Davis characterizes the difference in judicial attitude toward certain administrative rules as a distinction between 'legislative regulations' and 'interpretative regulations.' He has defined 'legislative rule' as 'the product of an exercise of legislative power by an administrative agency, pursuant to a grant of legislative power by the legislative body.' 'Interpretative rules,' he states, 'are rules which do not rest upon a legislative grant of power (whether explicit or inexplicit) to the agency to make law.' The distinction is not always easy to draw, since as Davis points out, 'Interpretative rules sometimes rest upon statutory authority to issue them.   *  *  *'
>
> . . . .
>
> [T]he distinction between legislative and interpretative rule-making is a helpful one when reviewing regulations adopted by state administrative agencies. We hold, therefore, that when a regulation has been adopted under a delegation of authority from the legislature to the administrative agency to formulate policies and to act in the place of the legislature, we should not examine the content of the regulation to judge its wisdom, but should exercise a scope of review not unlike that exercised with respect to a statute.
>
> . . . .
>
> Thus, where an administrative regulation has been adopted in accordance with the procedures set forth in the Administrative Procedure Act, and it appears that the legislature has intended to commit to the agency discretion as to the particular matter that forms the subject of the regulation, we will review the regulation in the following manner: First, we will ascertain whether the regulation is consistent with and reasonably necessary to carry out the purposes of the statutory provisions conferring rule-making authority on the agency. This aspect of review insures that the agency has not exceeded the power delegated by the legislature. Second, we will determine whether the regulation is reasonable and not arbitrary. This latter inquiry is proper in the review of any legislative enactment.

We think it clear that AS 23.10.085 and 23.10.095 [12] constitute a delegation of authority from the legislature to the agency to formulate policies, leaving to the agency's discretion the issue whether federal definitions of "regular rate of pay" and

---

11. *See also Anchorage v. Geber*, 592 P.2d 1187, 1191–92 & 1192 n.8 (Alaska 1979), where we overruled as "ill advised" that portion of *Layland v. State*, 535 P.2d 1043 (Alaska 1975) suggesting that parties' concessions regarding interpretations of law are binding upon the courts.

12. *See* notes 7 and 8 *supra.*

other terms can be applied consistently with Alaska's Wage and Hour Act. Thus, we hold that the "reasonable and not arbitrary" test is applicable.

■ The parties stipulated to the specific statutory provisions upon which the state relies to justify the regulation. These are AS 23.05.160,[13] which requires that an employee be informed of his rate of pay at the time of hiring and of any change in that rate on the payday prior to the change, and AS 23.10.060,[14] which requires the one and one-half overtime rate not only for hours worked over forty per week, but also for hours worked over eight per day.

Dresser argues that 8 AAC 15.100(d)(3) furthers neither of these statutory provisions; and indeed, our assessment of the parties' arguments indicates that the regulation is related only tenuously, if at all, to these provisions. However, the state's brief argues that the regulation is grounded in policy considerations beyond those contained in the two statutes. Although Dresser argues that this disregard of the stipulation is improper, we have concluded for the reasons noted above that the stipulation is not binding upon this court. In another case in which the parties had attempted to stipulate to the purpose of a legislative enactment, the New York Court of Appeals noted:

> We are not bound by stipulations in respect of the purpose of legislation. Laws are not to be declared invalid upon the consent of parties. We must determine their purpose and tendency for ourselves.

*E. Fougera & Co., Inc. v. City of New York,* 224 N.E. 269, 120 N.E. 642, 643 (1918).

The public policy underlying the Alaska statutory scheme is given as follows in AS 23.10.050:

> *Public Policy.* It is the public policy of the state to
>
> (1) establish minimum wage and overtime compensation standards for workers at levels consistent with their health, efficiency and general well-being, and
>
> (2) safeguard existing minimum wage and overtime compensation standards which are adequate to maintain the health, efficiency and general well-being of workers against the unfair competition of wage and hour standards which do not provide adequate standards of living.

On the basis of these policy pronouncements, the state argues that the basic concern of the legislature was protection of the worker's well-being against unfair wage and hour standards, and that this concern is of particular importance in Alaska, where the cost of living is higher than in other states. The state also argues that prohibiting the FWW would be to the worker's advantage, and cites the present case as an illustration: claimant Woody would be entitled to $3,956.76 if the regulation were upheld.

More specifically, the state argues that as the number of hours worked in a particular week increases, the "regular rate of pay" decreases; as the "regular rate" decreases, the resultant "overtime rate" decreases; and thus the effect of allowing the FWW is counter-productive to the stated purposes of the Act. The state insists, further, that the FWW makes it financially advantageous

---

13. As 23.05.160 reads:

*Notice of wage payments.* An employer shall notify his employee in writing at the time of hiring of the day and place of payment, and the rate of pay, and of any change with respect to these items on the pay day before the time of change. An employer may give this notice by posting a statement of the facts, and keeping it posted conspicuously at or near the place of work where the statement can be seen by each employee as he comes or goes to his place of work.

14. The applicable portion of AS 23.10.060 reads:

*Payment for overtime.* No employer who employs employees engaged in commerce, or other business, or in the production of goods or materials in Alaska may employ an employee not acting in a supervisory capacity, either male or female, for a workweek longer than 40 hours or for more than eight hours a day, except that if the employer finds it necessary to employ an employee in excess of 40 hours a week or eight hours a day, compensation for the overtime at the rate of one and one-half times the regular rate of pay shall be paid, and this provision is considered included in all contracts of employment.

for an employer to hire an employee to work long overtime hours rather than to hire more workers, contrary to one purpose of the overtime provision, which was to force employers to spread employment by hiring more persons.[15]

We are persuaded that the state's position is correct. Under a standard hourly wage salary, as a worker's overtime hours increase, the average hourly wage increases. Under the FWW, as a worker's overtime hours increase, the average hourly wage decreases. This contravenes the policies of requiring increased overtime compensation and promoting the spreading of employment.

Thus, we must conclude that the regulation's definition of "regular rate of pay" so as to exclude use of the FWW is consistent with, and reasonably necessary to carry out, the purposes of the relevant statutory provisions. The regulation does not exceed the power delegated by the legislature. Further, 8 AAC 15.100(d)(3) is a reasonable and non-arbitrary method of furthering the statute's policies.[16]

Dresser raises several collateral arguments concerning the regulation's prohibition of the "Belo" pay plan, *see Walling v. A.H. Belo Corp.*, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942); 29 U.S.C.A. § 207(f), and the permissibility of piece-work and commission pay plans. The validity of these provisions is not before us, and we perceive no inconsistency so blatant as to render the prohibition of the FWW unreasonable or arbitrary.

The judgment of the superior court is AFFIRMED.

---

**15.** The United States Supreme Court has repeatedly emphasized this point. In *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460, 68 S.Ct. 1186, 1194, 92 L.Ed. 1502, 1514 (1948), the Court said, "The purpose was to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost."

**16.** The parties have not addressed, and we express no opinion concerning, the question whether there may be any conflict between 8 AAC 15.100(d)(3) and AS 23.10.060(17) and (18), enacted in ch. 31, § 1, SLA 1980.