**Richard JANES, individually, and as class representative, Appellant,**

v.

**OTIS ENGINEERING CORPORATION, Appellee.**

**No. S–1665.**

Supreme Court of Alaska.

June 3, 1988.

Rehearing Denied June 28, 1988.

James E. Hutchins, Faulkner, Banfield, Doogan & Holmes, Anchorage, for appellant.

Ray D. Gardner, Hartig, Rhodes, Norman, Mahoney & Edwards, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE and COMPTON, JJ.

### OPINION

COMPTON, Justice.

This appeal is from an order granting Otis Engineering Corporation's (Otis) motion for summary judgment on the legality of its system of dual hourly pay to its employees. The issue presented is whether that pay system violates our wage and hour laws and accompanying regulations. For the following reasons, we reverse and remand for further proceedings.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Otis maintains shops and employees to provide services to major oil companies on the North Slope and the Kenai Peninsula. It utilizes a variable hourly pay plan that incorporates differing rates of pay based on the type of work performed by an employee. The various rates are classified as "revenue," "non-revenue," and "non-revenue bonus."[1]

"Revenue" work is performed for the benefit of a customer in the field and is billed to that customer. "Non-revenue" work is not billed to a customer, generally being performed in and around the shop for the benefit of the company (i.e. maintenance and repair of company property and equipment). Otis guarantees its North Slope employees 12 hours per day, and its Kenai employees 40 hours per week, of "revenue" rate hours. "Non-revenue bonus" work is "non-revenue" work credited to the employee at the higher "revenue" rate in order to uphold these guarantees.

Richard Janes filed this class action against Otis claiming that Otis' dual hourly pay plan results in improper computation of overtime pay and thus violates the terms of AS 23.10.060 and 8 AAC 15.100(b).

In August 1985 Otis moved for summary judgment or dismissal of the action. Janes opposed the motion and cross-moved for partial summary judgment. At about this time, the Alaska Department of Labor (DOL) amended 8 AAC 15.100(b) to require that the computation of the regular hourly rate for individuals in dual hourly rate programs, for purposes of determining overtime pay, be calculated by applying the provisions of 29 C.F.R. § 778.115.

Following oral argument, the trial court granted Otis' motion for summary judgment. Janes appeals.

### II.  DISCUSSION

#### A.  THE TRIAL COURT ERRED IN CONSTRUING FORMER 8 AAC 15.100(b).

AS 23.10.060 provides that an employer may not employ a non-supervisory employee for more than eight hours per day or 40 hours per week unless the employer pays

---

1. The pay plan is actually considerably more complex. Employees can receive bonuses above the revenue rate for certain types of work or work under unusual circumstances. However, these additional bonuses are not material to the issues presented on review and, to avoid needless complexity, are not referred to in our discussion.

overtime at the rate of one and one-half times the employee's "regular rate of pay:"

Payment for overtime. An employer who employs employees engaged in commerce, or other business, or in the production of goods or materials in Alaska may not employ an employee not acting in a supervisory capacity, either male or female, for a workweek longer than 40 hours or for more than eight hours a day, except that if the employer finds it necessary to employ an employee in excess of 40 hours a week or eight hours a day, compensation for the overtime at the rate of one and one-half times the regular rate of pay shall be paid, and this provision is considered included in all contracts of employment.

Former 8 AAC 15.100(b) (Eff. 12/9/78) defined "regular rate of pay" as follows:

8 AAC 15.100. PAYMENT FOR OVERTIME. (a) An employee's regular rate is the basis for computing overtime. The regular rate is an hourly rate figured on a weekly basis. Employees need not actually be hired at an hourly rate; they may be paid by piece-rate, salary, commission or any other basis agreeable to the employer and employee. However, the applicable compensation basis must be converted to an hourly rate when determining the regular rate for computing overtime compensation.

(b) The regular rate referred to in (a) is that fixed hourly amount determined from an employee's hourly wage, salary, commission, piece-rate *or other basis of compensation that he is to be paid for all contract hours up to the daily or weekly maximum, established under AS 23.10.060,* that he is regularly employed to work during a workweek.

(Emphasis supplied).

During the litigation in this case, the DOL amended 8 AAC 15.100 (am. 9/28/85) as follows:

8 AAC 15.100. PAYMENT FOR OVERTIME. (a) An employee's regular rate is the basis for computing overtime. The regular rate is an hourly rate figured on a weekly basis. An employee need not actually be hired at an hourly

rate. The employee may be paid by piece-rate, salary, commission, or any other basis agreeable to the employer and employee. However, the applicable compensation basis must be converted to an hourly rate when determining the regular rate for computing overtime compensation. The following provisions apply for an employee paid on a salary basis:

. . . .

(b) In order to compute a regular hourly rate for the purpose of determing [sic] the overtime rate for an employee who is paid other than hourly or by salary, the following provisions of 29 C.F.R. Part 778 apply:

. . . .

(2) *for an employee who works at two or more hourly rates, 29 C.F.R. sec. 778.115[.]*

(Emphasis added).

29 C.F.R. § 778.115 (1986) provides in part:

Employees working at two or more rates:

Where an employee in a single workweek works at two or more different types of work for which different non-overtime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates. That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs.

Both the pre- and post-amendment regulations apply to the case at bar. Both were controlling during their respective periods of effectiveness. Therefore we address the construction of each.

In construing former 8 AAC 15.100(b), the trial court stated:

The Court construes the term, "all contract hours *up to daily or weekly maximum,*" to mean the total or maximum hours an employee actually worked per given daily or weekly period. In the Court's view, this construction makes

sound policy sense, for under [Janes'] interpretation, an employer could deliberately depress overtime compensation by maintaining particularly low hourly rates for the first 8 hours of each day (or 40 hours of each week). Conversely, were an employee to earn unusually high rates (due to unique employment) for the first 8 (or 40) hours, the overtime compensation rates could be artificially inflated. The weighted average approach makes the most sense to both employee and employer, in this Court's opinion.

(Emphasis in original).

Janes contends that the trial court's interpretation of former 8 AAC 15.100(b) is contrary to the plain language of the regulation, that it ignores the purpose of the overtime statute, that it usurps the quasi-legislative function of the DOL and that the hypothetical abuses by employers cited by the trial court are unrealistic.

■ Janes argues specifically that the plain language of former 8 AAC 15.100(b) requires the employer to compute the employee's "regular rate" for overtime purposes by using the hourly rate paid for the first eight hours per day (or 40 hours per week) because the phrase "established under AS 23.10.060" in former 8 AAC 15.-100(b) is meant to modify the phrase "up to the daily or weekly maximum" also contained in that regulation. We agree.

We begin our analysis by observing that "[t]here is no safer nor better settled canon of [statutory] interpretation than that when language is clear and unambiguous it must be held to mean what it plainly expresses." 2A C. Sands, *Sutherland Statutory Construction* § 46.01 at 73 (4th ed. 1973) (footnote omitted).[2] However, "[t]he literal interpretation of the words of an act should not prevail if it creates a result contrary to the apparent intention of the legislature and if the words are sufficiently flexible to allow a construction which will effectuate the legislative intention." *Id.* § 46.07 at 110.

The legislative intent of our overtime statute and regulations is twofold:

1. to establish minimum wage and overtime compensation standards for workers at levels consistent with their health, efficiency and general well-being, and

2. safeguard existing minimum wage and overtime compensation standards which are adequate to maintain the health, efficiency and general well-being of workers against the unfair competition of wage and hour standards which do not provide adequate standards of living.

*Dresser Indus. v. Alaska Dep't of Labor*, 633 P.2d 998, 1005 (Alaska 1981), *cert. denied*, 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 137 (1982); *see also* AS 23.10.050. Put more bluntly, the purposes are to "compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost." 633 P.2d at 1006 n. 15 (quoting *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460, 68 S.Ct. 1186, 1194, 92 L.Ed. 1502, 1514 (1948)).

It is consistent with these purposes to read former 8 AAC 15.100(b) as requiring the "regular rate" to be calculated by considering a normal workweek of 40 hours, or eight hours per day, rather than the total number of hours actually worked. Construing the regulation otherwise would allow Otis to deliberately deflate the overtime rate by crediting its employees with low hourly rates for the overtime worked. Then, the more overtime an employee worked, the more the weighting system would work to lower the value of each hour worked. This is clearly contrary to the purpose of the overtime statutes because it lessens the premium the employer must

---

2. At issue here is the interpretation of a regulation and not a statute. However, we have held this particular regulation to be "quasi-legislative" in the administrative law context, *see Dresser Indus. v. Alaska Dep't of Labor*, 633 P.2d 998, 1004 (Alaska 1981), *cert. denied* 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 137 (1982), and we have further held that "administrative regulations which are legislative in character are interpreted using the same principles applicable to statutes." *State, Dep't of Highways v. Green*, 586 P.2d 595, 603 n. 24 (Alaska 1978).

pay to work his employees more than 40 hours per week. (*See* Appendix).

We construe former 8 AAC 15.100(b) as requiring the employer to determine the "regular rate" by determining what the employee would receive if the employee only worked 40 hours per week or eight hours per day. Applying this standard to Otis' plan, if Janes had only worked up to eight hours per day to the maximum of 40 hours in a week, his salary would not be weighted by the non-revenue hours worked. Instead, Otis' guarantee that Janes will be credited with 12 revenue hours per day (or 40 revenue hours each week) would operate to ensure that each regular rate hour worked was valued at least at the "revenue" rate. Otis may value some hours more than this minimum because of bonuses,[3] in which case the resulting value of a "regular rate" hour would be weighted higher by the number of bonus hours worked. But, given Otis' guarantee, Otis may not devalue the regular rate paid Janes by incorporating hours of lower value into its calculations. Nor may Otis pay less than a 50% premium on the overtime hours worked.

Otis' argument, which the trial court accepted, that considering only the first eight hours per day or 40 hours per week as the basis of the regular rate may lead to manipulation, is unpersuasive in the context of the case at bar. This is because of Otis' guaranteed minimum 12 hours per day or 40 hours per week at the revenue rate. We realize that without the guarantee the answer to the question: "What would Janes receive if he worked only eight hours per day or 40 hours per week?" would be the same as the answer to the question: "What would Janes receive for his *first* eight hours per day or 40 hours per week?" The answer to the second question depends on the actual values of the first eight hours worked per day. But Otis has said that, were an employee only to work eight hours per day or 40 hours per week, he would receive the revenue rate for all these hours; the actual values of the hours

worked would not determine his pay for that week. (*See* Appendix).

The record reflects that the Alaska DOL issued a letter to Otis, apparently upon request, evaluating Otis' use of the weighted average method under former 8 AAC 15.100(b). That letter stated:

The department, after a review of your payroll and compensation procedures, is of the opinion that there is no violation of *AS 23.10.060* or attending regulations.

(Emphasis in original). We accord some deference to the agency's expertise in evaluating pay plans of employers. *See Arndt v. State, Dep't of Labor,* 583 P.2d 799, 803 (Alaska 1978). However, that deference does not prohibit us from independently construing a regulation when our construction is more consistent with the objective of the underlying statute.

Otis also argues that the amendments to 8 AAC 15.100(b) clarified rather than changed the language of former 8 AAC 15.100(b). As we discuss in Part II. C., *infra*, these amendments might allow Otis to use all the hours an employee works in a week to determine the regular rate. However, we disagree with Otis as to the effect of these amendments.

First, Otis presented evidence that the DOL believed the amendments only served to clarify the regulation. This evidence was in the form of a document entitled "Summary of Contemplated Action and Reasons Supporting Need to Amend, Repeal or Adopt" and the testimony of DOL Deputy Director Donald R. Wilson. While the opinion of the governing agency of the effect of an amendment should certainly be given weight in our own interpretation of the amendment's effects, it is not dispositive. Where, as in the case at bar, we have determined that an agency's preferred interpretation is inconsistent with the language and purposes of the subject regulation we may substitute our interpretation of the regulation for that of the agency's.

Second, "an amendment to an unambiguous statute is generally presumed to indicate a change in the law." *Torkko/Kor-*

---

**3.** *See supra* note 1.

*man/Engineers v. Penland Ventures,* 673 P.2d 769, 773–74 (Alaska 1983); *see also* 1A C. Sands, *supra* p. 7, § 22.30 at 178–79. This advice is well followed where the amended regulation is substantially reworded and the amendment incorporates a reference to a new standard. The new standard in 8 AAC 15.100, which is 29 C.F.R. § 778.115, requires consideration of all hours worked while the old standard, AS 23.10.060, refers to a 40 hour workweek. While we recognize that former 8 AAC 15.100 is not without ambiguity, we feel it is better interpreted by relying on the language of the regulation itself and the policies it promotes rather than by referring to amendments which substantially changed the regulation.

B. THE TRIAL COURT ERRED IN FINDING THAT NO GENUINE QUESTION OF MATERIAL FACT EXISTED TO PRECLUDE SUMMARY JUDGMENT ON THE ISSUE OF WHETHER OTIS' PAY PLAN COMPLIES WITH 29 C.F.R. § 778.115.

29 C.F.R. § 778.115 provides in part:
Employees working at two or more rates.

Where an employee in a single workweek works *at two or more different types of work for which different non-overtime rates of pay* (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates. That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs.

(Emphasis added). Thus, 29 C.F.R. § 778.115 requires that a weighted average of the value of all hours worked be employed to calculate overtime where an employee in a single workweek works at two or more different types of work for which different non-overtime rates are paid.

Janes argued before the superior court that a question of material fact is presented under 29 C.F.R. § 778.115 as to whether Otis pays "different non-overtime rates of pay" for "different types of work," or pays "different non-overtime rates of pay" for the same type of work.

The superior court found:

First, insofar as plaintiffs' complaint and claims arise entirely under state law, rather than federal law, the argument fails.

More importantly, to the extent that plaintiffs mean to argue that a fact question is presented under 8 AAC 15.100(b) (if such regulation is interpreted pursuant to 29 C.F.R. § 778.115), plaintiffs have failed to adequately and specifically raise such question of material fact in its materials. All plaintiffs assert is that "The affidavits of Richard Janes, Art Peck and Terry Bryant demonstrate that Otis employees *may* be paid different rates for doing the same work." Plaintiffs' December 13, 1985 reply at 34. Raising the *possibility* of the existence of genuine issue of material fact does not adequately present such issue for purposes of defeating a motion for summary judgment.

(Emphasis in original).

▉ Even though Janes' claims arise under state law, the trial court's first finding is erroneous. 8 AAC 15.100(b) now incorporates 29 C.F.R. § 778.115. Therefore, it must be determined whether Otis' pay plan violates the federal regulation, and accordingly, whether any genuine issue of material fact exists to preclude summary judgment.

▉ Otis moved for summary judgment on this issue. Accordingly, it had the "burden of proving that [Janes'] case ha[d] no merit." *Williams v. Municipality of Anchorage,* 633 P.2d 248, 250 (Alaska 1981). Otis submitted evidence that its "non-revenue" and "revenue" work is differentiated by three factors: (1) "revenue" work is billed to all Otis customers while "non-revenue" work is not; (2) "non-revenue" work is performed in the shop while "revenue" work is performed in the field, often under arctic conditions; and (3) "revenue" work involves certain "productive" tasks specified by category while "non-revenue" work

involves other specified tasks in the "non-productive" categories.

In response Janes submitted the affidavits of three employees, Richard Janes himself, Art Peck and Terry Bryant. These employees indicated that they performed the same work for different rates of pay. Further, Janes introduced Otis' corporate policy document on its dual hourly pay plan and here argues that one section of that document establishes conclusively that Otis pays different rates for the same work. That section reads:

> Service crews occasionally work on jobs that would normally be billed to a customer, but for some reasons, such as experimental or promotional nature of the work, no service charges are made. Employees working on these "no charge" jobs are at revenue rates on all hours that would normally be billed to the customer at our regular service rates. *Reruns or reworks resulting from the manner in which service [sic] or job was performed by our crews are not paid at the revenue rate.*

(Emphasis added).

We disagree with the trial court that no genuine issue of material fact exists. The trial court ostensibly did not consider the employees' affidavits in arriving at its conclusion. These affidavits evidence that each affiant was paid different rates for performing the same work. This raises the inference that Otis employees on the whole may receive different pay for the same type of work. At the very least, it appears from the corporate policy document and from the three employee affidavits that there is a factual dispute as to whether Otis' dual hourly pay plan requires employees to perform "different types of work for different hourly rates." Furthermore, Otis' guarantee that its employees will be paid at higher rates for the first 12 hours per day or 40 hours per week (depending on the location) regardless of whether field-located, client billed services are being performed instead of work performed in the shop on Otis' behalf further suggests that Otis employees may be performing the same work for different rates of pay.

We therefore reverse the trial court on this issue and remand the case for further proceedings consistent with this opinion.

C. THE APPLICATION OF 29 C.F.R. § 778.115 TO THE CONSTRUCTION OF THE NEW 8 AAC 15.-100(b)(2).

As we conclude above, we are unable to determine as a matter of law whether 29 C.F.R. § 778.115 applies to the case at bar. However, we can determine the construction of the regulation under either resolution of the question determined on remand by the trial court. If the trial court determines that the regulation does apply, then all compensation paid should be divided by all hours worked during the workweek. This is consistent with the current Otis scheme and is a result to which Janes admits.

However, the regulation may not apply. In other words, Otis may be paying different rates for the same work rather than for different work. If this is the case then 8 AAC 15.100(b) cannot apply and the general provisions of 8 AAC 15.100(a) must fill the void created by the lack of a more specific regulation. Those general provisions state: "The regular rate is an hourly rate figured on a weekly basis." A "week" is defined by AS 23.10.060 to be 40 hours. Therefore, we are led to the same question we discussed in Part II. A. of this opinion: "What would Janes' hourly rate be if he worked a normal workweek of 40 hours?" Having discussed the question once we need not repeat our analysis to reach the same answer. The conclusion we reach is that if 29 C.F.R. § 778.115 does not apply to the case at bar, then, because of Otis' guarantee of 12 hours per day or 40 hours per week at the "revenue" rate, the regular rate for the purpose of overtime hours will equal the "revenue" rate.

### III. CONCLUSION

For these reasons we REVERSE the decision of the trial court and REMAND for further proceedings.

MOORE, J., not participating.

## APPENDIX

The following calculations are included to illustrate the effect on an employee's pay of the various formulae considered in this opinion. For clarity, the actual pay rates have been rounded to the nearest dollar. Each calculation is for one day's pay.

EXAMPLE 1. Assume that the employee works a 40 hour week, the first 20 hours at the non-revenue rate of $7.00/hr., the last 20 hours at the revenue rate of $14.00/hr. Without Otis' guarantee:

```
20 hours @$  7.00  =  $140.00
20 hours @  14.00  =  $280.00
                      _____
                       $420.00
One overtime hour = ($420 ÷ 40) × 1.5 = $15.75
```

EXAMPLE 2. Assume the same 40 hour workweek as Example 1 but include the effect of Otis' bonus. The employee is guaranteed 40 hours at the revenue rate but has only worked 20. Therefore, Otis will credit the employee with 20 hours (40 − 20 = 20) of non-revenue bonus time at the revenue rate.

```
20 hours @$14.00  =  $280.00 (non-revenue bonus)
20 hours @$14.00  =  $280.00 (revenue hours)
                     _____
                      $560.00
One overtime hour = ($560 ÷ 40) × 1.5 = $21.00
```

EXAMPLE 3. Assume a 60 hour workweek, the first 20 hours at the non-revenue rate, the last 40 hours at the revenue rate. Include Otis' guarantee. Otis guarantees 40 hours at the revenue rate, which is satisfied in this scenario. Therefore, under Otis' formula the value of one overtime hour would be calculated as follows:

```
20 hours @$  7.00  =  $140.00
40 hours @$ 14.00  =  $560.00
                      _____
                       $700.00
One regular hour = $700 ÷ 60 = $11.67
One overtime hour = $11.67 × 1.5 = $17.51
```

The resulting value of one overtime hour is less than in example 2 because of Otis' weighting method. Therefore, the employee is not receiving the full value of the guarantee.

EXAMPLE 4. Assume a 60 hour workweek, the first 20 hours at the non-revenue rate, the second 20 at the revenue rate, and the last 20 at the non-revenue rate. With Otis' guarantee, Otis will be forced to credit the employee with 20 hours of non-revenue bonus time (40 revenue hours guaranteed—20 actually worked, 20 at non-reve-nue bonus rate). The resulting overtime calculation will be the same as Example 3.

EXAMPLE 5. Assume the same workweek as Example 3. However, consider the effect of former 8 AAC 15.100(b). Because the value for each overtime hour when weighted, $17.51, is less than the value of each overtime hour had the employee only worked a 40 hour workweek (Example 2), $21.00, the employee is not receiving the statutorily mandated premium of one and one-half times his "regular rate." Therefore, Otis must pay $21.00/hr. as the overtime rate to satisfy the statutory requirement.