[Civ. No. 42060. Second Dist., Div. Two. Mar. 11, 1974.]

OGO ASSOCIATES et al., Plaintiffs and Appellants, v.
CITY OF TORRANCE et al., Defendants and Respondents.

COUNSEL

Dudley Gray and Smothers & Lasser for Plaintiffs and Appellants.

Stanley E. Remelmeyer, City Attorney, and Ralph H. Nutter for Defendants and Respondents.

OPINION

FLEMING, Acting P. J.—Ogo Associates (Ogo), a partnership, and Torrance Properties (Properties), a limited partnership, appeal a judgment of the superior court denying their petition for a writ of mandate to compel the City of Torrance (Torrance) to issue Ogo a permit to build a federally financed 86-unit apartment project for persons with low incomes.

Properties owns approximately three acres of undeveloped land in an area of Torrance known as Victor Precinct. Land use in the Victor Precinct is mixed—apartment house, agricultural, light manufacturing, institutional—and much of the land is vacant. In September 1970 Properties contracted to sell its land to Ogo for $346,000 on condition that Ogo obtain a permit from Torrance to build low-income apartments financed by the federal government under section 236 of the National Housing Act (Pub. L. No. 90-448; see 12 U.S.C.A. §§ 1701, 1715z-1). For the previous eight years appellants' property had been classified as R3, a zoning that would have allowed construction of the apartments. Ogo obtained its financing and applied for a building permit, but before the permit could be issued the Torrance City Council in May 1971 enacted an emergency ordinance imposing a moratorium on building permits and dwelling-unit construction in the part of Victor Precinct that included the site of Ogo's proposed low-income apartments. In August 1971 the city council enacted a second moratorium on the issuance of building permits in the Victor Precinct area, and shortly thereafter it adopted a permanent ordinance rezoning the area to ML, a classification which limited land use to light manufacturing purposes only.

In the trial court appellants contended that but for the moratorium and rezoning ordinances Torrance would have issued Ogo a building permit; that unconstitutional racial and economic discrimination motivated enactment of the ordinances; that because of this taint the ordinances were in-

valid, and Torrance should be ordered to issue the requested building permit. The trial court denied relief, holding that enactment of the moratorium ordinances was proper, that appellants were not entitled to the relief sought because, (1) Ogo had not satisfied all conditions for issuance of a building permit prior to the time Torrance enacted its moratorium ordinances, and (2) appellants had not exhausted their administrative remedies by applying to the city council for a variance from the rezoning ordinance. In view of these procedural rulings the trial court did not pass on the constitutional validity of the rezoning ordinance, nor did it attempt to evaluate the voluminous mass of evidentiary material which had been brought before it.

■ We agree with the trial court that Torrance could properly impose moratoriums on issuance of building permits in a particular area pending full zoning study. (*Miller* v. *Board of Public Works*, 195 Cal. 477, 496-497 [234 P. 381, 38 A.L.R. 1479]; Gov. Code, § 65858; Annot., Validity and Effect of "Interim" Zoning Ordinance, 30 A.L.R.3d 1196.) We likewise agree with the trial court that Ogo had not fulfilled all the requirements for a building permit prior to the time Torrance imposed its moratoriums on issuance of building permits. But we think the evidence also disclosed that Ogo would have met the requirements for a building permit when the moratorium ordinances expired. Consequently, the constitutionality of the permanent rezoning ordinance became a justiciable issue—unless the court was correct in its ruling that appellants' failure to apply for a variance amounted to a failure to exhaust administrative remedies.

The opinion in *Metcalf* v. *County of Los Angeles*, 24 Cal.2d 267, 270-271 [148 P.2d 645], explains the doctrine of exhaustion of administrative remedies as applied to zoning cases: "A zoning ordinance places limitations upon the use of land within designated areas in accordance with the general policy adopted by the legislative body. The ordinance may be arbitrary and discriminatory in isolated cases as applied to certain property, and compliance therewith may present unusual difficulties in many other instances. But it is manifestly impracticable, if not impossible, to enumerate in the ordinance itself the varied factual situations to which the ordinance is not applicable because of constitutional objections or other special considerations. Consequently, almost every zoning ordinance, including the one under consideration, contains provisions whereby an owner may apply to an administrative body for permission to put his land to a nonconforming use. . . . If the landowner is permitted to ignore the procedure set forth in the ordinance whereby he may have his property excepted from the restrictions thereof, the board's statutory power to impose terms and conditions upon particular uses of property is circumvented. Equity's jurisdiction

is limited by the existence of a tribunal created or given additional powers for the very purpose of making factual determinations and alleviating the hardships of an oppressive statute as applied to the facts related by each complainant."

■ Yet the doctrine of exhaustion of administrative remedies has not hardened into inflexible dogma. (*Hollon* v. *Pierce,* 257 Cal.App.2d 468, 476 [64 Cal.Rptr. 808].) It contains its own exceptions, as when the subject matter of the controversy lies outside the administrative agency's jurisdiction (*County of L.A.* v. *Dept. of Social Welfare,* 41 Cal.2d 455, 457 [260 P.2d 41]), when pursuit of an administrative remedy would result in irreparable harm (*Greenblatt* v. *Munro,* 161 Cal.App.2d 596, 605-607 [326 P.2d 929]; see *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 296-297 [109 P.2d 942, 132 A.L.R. 715]), when the administrative agency cannot grant an adequate remedy (*Endler* v. *Schutzbank,* 68 Cal.2d 162, 168 [65 Cal.Rptr. 297, 436 P.2d 297]; *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind,* 67 Cal.2d 536, 543-544 [63 Cal.Rptr. 21, 432 P.2d 717]), and when the aggrieved party can positively state what the administrative agency's decision in his particular case would be. (*Gantner & Mattern Co.* v. *California E. Com.,* 17 Cal.2d 314, 318 [109 P.2d 932]. See also *Exhaustion of Administrative Remedies in California,* 56 Cal.L. Rev. 1061, 1068-1081.)

■ Appellants' case falls within the last-mentioned exception. The Torrance Municipal Code authorizes the city council to grant variances from a zoning ordinance whenever practical difficulties and unnecessary hardships will result from strict enforcement of the ordinance. But here appellants can positively state that the city council would not have granted them a variance. The evidence is overwhelming that the city council rezoned the Victor Precinct area because appellants planned to build their project there; it is inconceivable the city council would grant a variance for the very project whose prospective existence brought about the enactment of rezoning. This is not a situation where the possibility of relief from a general policy exists because of the unusual circumstances of a particular case; to the contrary, in this instance the circumstances of the particular case gave birth to the ordinance's general policy. To require appellants to apply to the city council for a variance on behalf of this project would be to require them to pump oil from a dry hole. (Cf. *Park View Heights Corporation* v. *City of Black Jack* (8th Cir. 1972) 467 F.2d 1208; *G & D Holland Construction Co.* v. *City of Marysville,* 12 Cal.App.3d 989 [91 Cal.Rptr. 227].)

We conclude that appellants were not required to pursue futile administrative remedies in order to invoke the jurisdiction of the courts. The trial

court should have reviewed appellants' claims and considered the substantive questions presented: Did Torrance discriminate against appellants? If so, was the discrimination unlawful because not grounded upon a legitimate governmental purpose? If unlawful, what relief is appropriate? Appellants are entitled to a new hearing to present updated factual material in support of their contentions, and they are entitled to findings of fact and conclusions of law on all contested issues. (*Treu* v. *Kirkwood,* 42 Cal.2d 602, 612-613 [268 P.2d 482]; *Block* v. *D. W. Nicholson Corp.,* 77 Cal. App.2d 739, 747-748 [176 P.2d 739].)

The judgment is reversed, and the cause is remanded to the superior court for further proceedings in accordance with this opinion.

Compton, J., and Beach, J., concurred.