[No. B034767. Second Dist., Div. Three. Dec. 2, 1988.]

INSURANCE COMPANY OF NORTH AMERICA, Plaintiff and Appellant, v.
DEPARTMENT OF INDUSTRIAL RELATIONS et al., Defendants and Respondents.

**COUNSEL**

Regal & Levy, Leonard S. Levy, Bruce K. McMahon and Mary J. Rettberg for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Edmond B. Mamer, Richard W. Barke, Deputy Attorneys General, Thelen, Marrin, Johnson & Bridges, Wynne S. Carvill and Mark D. Flanagan for Defendants and Respondents.

## OPINION

DANIELSON, J.—Plaintiff and appellant Insurance Company of North America (insurer) appeals from orders dismissing its complaint for declaratory relief, and for a temporary restraining order, preliminary injunction and permanent injunction, as to defendants and respondents Self-Insurer's Security Fund (fund), Department of Industrial Relations (department), and department director Ron Rinaldi (director), after their demurrers to the complaint were sustained without leave to amend. (Code Civ. Proc., § 581, subd. (f)(1).) At issue is the applicability of Labor Code section 3701.5, subdivision (g), which provides, inter alia, for resolution by the director of disputes between a surety and the fund with respect to payment of workers' compensation claims against a private self-insured employer who fails to pay such claims, and for the taking of an appeal from the director's decision to the Workers' Compensation Appeals Board. We determine the statute applies, and affirm the judgment.

## FACTS

In 1984, the Legislature created the fund "to provide for the continuation of workers' compensation benefits delayed due to the failure of a private self-insured employer to meet its compensation obligations when the employer's security deposit [Lab. Code, § 3701] is either inadequate or not immediately accessible for the payment of benefits." (Lab. Code, § 3740.)[1] Each private self-insurer is required to participate as a member of the fund as a condition of maintaining its certificate of consent to self-insure. (§ 3742, subd. (a).) The fund is governed by a seven-member board of trustees. Six trustees represent private insurers, and are elected by the members of the fund; the director holds ex officio status, with full powers of a trustee except that he does not have a vote. The director "shall carry out exclusively the responsibilities set forth in Division 1 (commencing with Section 50) through Division 4 (commencing with Section 3200) and shall not have the obligations of a trustee under the Nonprofit Mutual Benefit Corporation Law. The fund shall adopt bylaws to segregate the director from all matters which may involve fund litigation against the department or fund participation in legal proceedings before the director." (§ 3742, subd. (b).)

Upon order of the director, pursuant to section 3701.5, the fund must assume the workers' compensation obligations of an insolvent self-insurer (§ 3743, subd. (a)), and is a party in interest in all proceedings involving

---

[1] Unless otherwise indicated, all statutory references are to the Labor Code.

compensation claims against an insolvent self-insurer whose compensation obligations have been paid or assumed by it. (§ 3743, subd. (c).)

The fund has the right and obligation to obtain reimbursement from an insolvent self-insurer for workers' compensation obligations that it pays or assumes on behalf of the insolvent self-insurer (§ 3744, subd. (a)), as well as the right to recover the amount so paid from the security deposit of the insolvent self-insurer (§ 3744, subd. (b), or from any excess insurance carrier of the self-insured employer (§ 3744, subd. (c)).

The present dispute has to do with subdivision (g) of section 3701.5, which reads: "Disputes concerning the posting, renewal, termination, exoneration, or return of all or any portion of the security deposit, or any liability arising out of the posting or failure to post security, or adequacy of the security or reasonableness of administrative costs, including legal fees, and arising between or among a surety, the issuer of an agreement of assumption and guarantee of workers' compensation liabilities, the issuer of a letter of credit, any custodian of the security deposit, a self-insured employer, or the Self-Insurers' Security Fund shall be resolved by the director. An appeal from the director's decision or determination may be taken to the appeals board. The appeals board may, in its discretion, assign the matter to a referee pursuant to Sections 5309 and 5310. Payment of claims from the security deposit or by the Self-Insurers' Security Fund shall not be stayed pending the resolution of the disputes unless and until the appeals board issues a determination staying a payment of claims decision or determination of the director."

In its complaint, the insurer alleged that it issued a surety bond securing the workers' compensation obligations of Monolith Portland Cement Company (Monolith), effective October 28, 1975. The bond was cancelled on October 25, 1983, and another surety issued a new bond. A controversy exists with respect to the effect of this change under the Bond and Undertaking Law of 1982. (Code Civ. Proc., § 995.010 et seq.)

Monolith filed a petition in bankruptcy on April 11, 1986, and the fund was ordered to assume its workers' compensation obligations. The fund then sought reimbursement from the insurer for Monolith's workers' compensation obligations based on injuries occurring prior to issuance of the insurer's bond.

The insurer alleged that the director is one of the seven member board of trustees governing the fund, which has the right to bring an action to recover compensation paid by it against "any person whose negligence or

breach of any obligation contributed to any underestimation of the self-insured employer's total accrued liability as reported to the director." (§ 3744, subd. (c).) The insurer alleged that in the present case, the department and the director are persons whose negligence, in failing to fulfill their statutory duties with respect to conducting audits of self-insured employers and determining what is reasonable and sufficient security to secure payment of workers' compensation obligations (§§ 3701, subd. (b), 3702.6, 3702.10), contributed to an underestimation of Monolith's total accrued liability. In addition, the director determines the method of payment and claims administration, including which security shall be called upon for the payment of compensation to injured workers, and at his sole discretion, determines the amounts in excess of the amounts necessary to pay claims, which are returned to the employer. (§§ 3701.3, 3701.5, subd. (b).) The insurer alleged that as a result of the above provisions, conflicts of interest exist between the director and the fund, and between the director and the insurer.

The insurer sought a declaration that it is exonerated from all further liability under its bond by reason of its replacement by a subsequently posted security; that it is no longer liable under its bond by reason of certain provisions of the Bond and Undertaking Law (Code Civ. Proc., §§ 995.020, subd. (b)(1), (b)(2), 995.430, subd. (a), 996.240, subd. (b), 996.330, subd. (b), 996.360, subd. (b)); that section 3701.5, subdivision (g) does not apply to this matter and is unconstitutional, invalid, and void; and that a surety issuing a self-insurers' bond may not be held liable to the obligee for any amount in excess of the bond penalty, i.e, the surety is not liable for administrative costs and legal fees exceeding the bond penalty.

The trial court sustained the demurrers of the fund, and the department and its director, without leave to amend, in the court's words, "based on a lack of jurisdiction. The primary jurisdiction is with the Director. There is a failure to exhaust administrative remedies and the failure to state a cause of action." Thereafter, the court entered the orders of dismissal from which this appeal is taken.

## CONTENTIONS

The insurer contends: (1) the trial court has jurisdiction over this dispute, in that the director is not empowered by section 3701.5, subdivision (g) to resolve disputes to which he or the department are parties, the section is unconstitutional, the director lacks jurisdiction to determine its constitutionality, and the section cannot be retroactively applied to this case; (2) the complaint states a cause of action; and (3) even if section 3701.5,

subdivision (g) is constitutional, the insurer is not required to exhaust its administrative remedies because it can positively state what the director's decision will be in this case.

Respondents contend their demurrers were properly sustained by the trial court because the statutory scheme does not violate due process of law, primary jurisdiction over the present dispute is with the director, and the insurer has failed to exhaust its administrative remedies.

## DISCUSSION

### 1. The Dispute Is Between the Insurer and the Fund

■ Contrary to the insurer's argument, the determination to seek recovery on its bond for Monolith's workers' compensation obligations was that of the fund, rather than the director. The primary objective of the insurer in these proceedings is to obtain a ruling exonerating it from liability on its bond. The insurer challenges the director's authority to resolve its dispute with the fund in this regard.

### 2. The Director Has Jurisdiction Over the Dispute Between the Insurer and the Fund

The insurer contends the director is disqualified from resolving disputes between sureties and the fund because he is a member of the board of trustees of the fund, and because he is responsible for auditing self-insurers. With respect to the director's role as trustee, he holds ex officio status and does not have a vote. Moreover, subdivision (b) of section 3742 specifically provides: "The fund shall adopt bylaws to segregate the director from all matters which may involve fund litigation against the department or fund participation in legal proceedings before the director." We assume the fund has complied with this directive, as the insurer did not allege to the contrary. Insofar as the insurer may claim that the director, merely by sitting on the board of the fund, influences other, voting board members in their decisionmaking process so as to create a conflict with his own decisionmaking role pursuant to section3701.5, subdivision (g), the claim is too speculative to render the statutory scheme unconstitutional. (See *British Motor Car Distributors, Ltd.* v. *New Motor Vehicle Bd.* (1987) 194 Cal.App.3d 81, 89 [239 Cal.Rptr. 280].)

With respect to the director's auditing duties, it is the fund, and not the insurer, which has the right to recover against "any person whose negligence or breach of any obligation contributed to any underestimation of the

self-insured employer's total accrued liability as reported to the director." (§ 3744, subd. (c).) As we have heretofore explained, the director is effectively insulated from matters involving fund litigation against the department, which includes the director, by the fund bylaws adopted pursuant to section 3742, subdivision (b).

■ The insurer also contends the director lack jurisdiction over the dispute because its bond was cancelled and replaced prior to the June 27, 1984, effective date of section 3701.5, subdivision (g). The present dispute did not arise until after the effective date of the statute: the fund was ordered to assume Monolith's obligations in 1986; the insurer filed its complaint in the instant case in 1987; and the fund filed its petition with the director in 1988. In any event, subdivision (g) of section 3701.5 effected only a procedural change. "The application to pending litigation of a statute effecting a change in procedure or providing a new remedy for the enforcement of existing rights is not violative of the principle of presumed nonretroactivity of a statute. [Citations.]" *(Governing Board* v. *Commission on Professional Competence* (1977) 72 Cal.App.3d 447, 461 [140 Cal.Rptr. 206].)

3. *The Insurer Must Exhaust Its Administrative Remedies*

■ Under the doctrine of " 'exhaustion of administrative remedies,' " "the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." *(Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715].)

■ " 'The doctrine of exhaustion of administrative remedies evolved for the benefit of the courts, not for the benefit of litigants, the state or its political subdivisions. It rests "on considerations of comity and convenience," and its basic purpose is to secure a "preliminary administrative sifting process" [citation] to lighten the burden of overworked courts in cases where administrative remedies are available and are as likely as the judicial remedy to provide the wanted relief. [Citation.]' " *(Karlin* v. *Zalta* (1984) 154 Cal.App.3d 953, 980 [201 Cal.Rptr. 379], quoting *Bozaich* v. *State of California* (1973) 32 Cal.App.3d 688, 698 [108 Cal.Rptr. 392].)

■ "Even where the statute sought to be applied and enforced by the administrative agency is challenged upon constitutional grounds, completion of the administrative remedy has been held a prerequisite to equitable relief. *(United States* v. *Superior Court* (1941) 19 Cal.2d 189, 194-195 . . .; *Robins* v. *County of Los Angeles* (1966) 248 Cal.App.2d 1, 13 . . . .) In

*Morton* v. *Superior Court* (1970) 9 Cal.App.3d 977, 984 . . . , the court stated: 'In *United States* v. *Superior Court, supra,* 19 Cal.2d 189, the California Supreme Court held that the exhaustion doctrine not only applies to orders which are erroneous but also to those assailed as nullities because illegally adopted. In *Security First Nat. Bank* v. *County of Los Angeles,* 35 Cal.2d 319, 321 . . . , our Supreme Court held that resort to the administrative remedy was required even though the statute sought to be applied and enforced by the administrative agency was challenged upon constitutional grounds.'" (*Griswold* v. *Mt. Diablo Unified Sch. Dist.* (1976) 63 Cal.App.3d 648, 652-653 [134 Cal.Rptr. 3].)

### 4. *This Case Is Not an Exception to the Rule Requiring Exhaustion of Administrative Remedies*

Citing *Ogo Associates* v. *City of Torrance* (1974) 37 Cal.App.3d 830 [112 Cal.Rptr. 761], the insurer contends it is not required to exhaust its administrative remedies because it can positively state what the administrative decision will be. This contention is based on the insurer's claim that the director's decision to order the fund to assume Monolith's workers' compensation obligations reflects his determination that the insurer is liable on its cancelled bond. However, it was the fund, and not the director, which sought reimbursement from the insurer. The insurer's claim that the director obviously advised the fund that its bond was in force, and has thus decided the issue that will be before him in proceedings pursuant to section 3701.5, subdivision (g), is purely speculative. The insurer also relies on the director's overruling of a demurrer in another case in which the insurer is involved.

In *Ogo, supra,* 37 Cal.App.3d 830, the Torrance city council rezoned a particular area of the city for the specific purpose of preventing the appellant from building its proposed project. The court stated, at page 834: "it is inconceivable the city council would grant a variance for the very project whose prospective existence brought about the enactment of rezoning. This is not a situation where the possibility of relief from a general policy exists because of the unusual circumstances of a particular case; to the contrary, in this instance the circumstances of the particular case gave birth to the ordinance's general policy. To require appellants to apply to the city council for a variance on behalf of this project would be to require them to pump oil from a dry hole. [Citations.]" *Ogo* is readily distinguishable from the present case, where the insurer asks us to assume that the director's decision in this case would be the same as that in another. We find no basis for an exception to the rule requiring exhaustion of administrative remedies.

## DECISION

The judgment is affirmed.

Klein, P. J., and Croskey, J., concurred.