[No. D057087. Fourth Dist., Div. One. Sept. 9, 2010.]

In re N.V. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
STEPHANIE V., Defendant and Appellant.

COUNSEL

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, County Counsel, John E. Philips and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

Lelah Selene Forrey-Baker, under appointment by the Court of Appeal, for Minors.

OPINION

O'ROURKE, J.—Stephanie V. appeals following the dispositional hearing in the dependency case of her daughter N.V. and son A.V. (together, the children). Stephanie contends the juvenile court erred by excluding evidence regarding the refusal of the San Diego County Health and Human Services Agency (the Agency) to grant placement approval of the home of maternal grandmother Christy H. Stephanie concludes the court erred by denying her request that the children be placed with Christy.[1] We affirm.

BACKGROUND

In December 2009 the Agency filed dependency petitions for one-month-old A.V. (§ 300, subd. (b)) and one-year-old N.V. (§ 300, subd. (j)). The

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

Stephanie correctly contends she has standing. (§ 361.3, subd. (a)(2) [parent's wishes are a factor in determining whether to place with relative]; *In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1051–1054 [81 Cal.Rptr.3d 556] [mother had standing to appeal denial of § 388 petition that sought (1) placement with relatives and (2) juvenile court review of Agency's disapproval of relatives' home]; *In re H.G.* (2006) 146 Cal.App.4th 1, 9–10 [52 Cal.Rptr.3d 364] [parents had standing to contest § 387 order removing children from grandparents' care]; *In re Joseph T.* (2008) 163 Cal.App.4th 787, 797 [77 Cal.Rptr.3d 806] [relative caregivers are more likely to support family reunification].)

petitions alleged A.V. had five fractured ribs and associated pleural effusion, injuries ordinarily not sustained absent a parent's unreasonable or neglectful acts or omissions. The children were detained in Polinsky Children's Center, then with a nonrelative extended family member and in a foster home.

On December 15, 2009, the day the children were detained and six days before the petition was filed, Christy, Stephanie and the children's father, Kurt V., asked that Christy be considered for placement. On December 16 the Agency found four previous child welfare referrals regarding Christy's home. On January 6, 2010, a social worker inspected the home and concluded it met physical safety standards.

After A.V. was found to have a sixth fractured rib, the Agency filed an amended petition alleging his parents subjected him to serious physical harm, including excessive discipline or physical abuse (§ 300, subd. (a)), and he suffered severe physical abuse by a parent, or by a person whom the parent knew or should have known was physically abusing him (§ 300, subd. (e)). The amended petition for N.V. added correlative allegations (§ 300, subd. (j)).

On March 3, 2010, the Agency declined to approve Christy's home for placement, citing the four child welfare referrals.[2] In 1998 there was a substantiated report[3] that Stephanie's maternal grandfather molested her when she was eight years old. At the time of the molestation Stephanie was living with Christy. In 2000 there was a substantiated report that Christy's 13-year-old son forced her five-year-old son to orally copulate him. In 2007 there was an inconclusive report[4] that the father of Christy's three youngest children emotionally abused them. In 2009 there was a report that Stephanie's father hit Stephanie's 14-year-old brother. The referral was "evaluated out."[5]

At the March 22, 2010, jurisdictional hearing, the court dismissed the section 300, subdivision (e) allegation in A.V.'s amended petition and the corresponding section 300, subdivision (j) allegation for N.V. The court amended the section 300, subdivision (a) allegation and corresponding section 300, subdivision (j) allegation to allege that A.V. suffered serious physical

---

[2] The Agency also questioned whether Christy was able to care for the children because she was recovering from a broken hip and taking pain medication. Furthermore, even after the true findings, Christy believed the juvenile court's intervention was "a big mistake."

[3] " 'Substantiated report' means a report that is determined by the investigator . . . to constitute child abuse or neglect . . . based upon evidence that makes it more likely than not that child abuse or neglect . . . occurred." (Pen. Code, § 11165.12, subd. (b).)

[4] " 'Inconclusive report' means a report that is determined by the investigator . . . not to be unfounded, but the findings are inconclusive and there is insufficient evidence to determine whether child abuse or neglect . . . has occurred." (Pen. Code, § 11165.12, subd. (c).)

[5] The full disposition of the referral states: "Initially assessed for IRS assignment. Downgraded to 10-day assignment and then Evaluated out in the region."

harm inflicted nonaccidentally by his parents. The court entered true findings on the section 300, subdivisions (a) and (b) allegations and the corresponding section 300, subdivision (j) allegations. The court ordered the Agency to distribute copies of Christy's home evaluation to all counsel. On March 23 the Agency filed the evaluation with the court.

Before the March 25 and 26, 2010, dispositional hearing, Christy moved to a new home. She did not give the Agency her new address and the Agency did not physically inspect her new home. At the hearing, Kurt's counsel sought to cross-examine the social worker about the Agency's reasons for refusing to approve Christy's home.[6] The Agency's counsel objected on relevance grounds, arguing the court had no authority to place the children in a home if the Agency had not approved it. The court sustained the objection, noting Christy had a pending grievance proceeding and had not exhausted her administrative remedies. When questioned by the court, the social worker said she did not know how long the grievance process would take. The court ordered the children placed in foster care and set a hearing for April 15 to address the relative placement issue.

## THE AGENCY'S REQUEST FOR JUDICIAL NOTICE AND MOTION TO AUGMENT THE RECORD

The Agency requests judicial notice of the juvenile court's April 15, 2010, minute orders and moves to augment the record on appeal with the Agency's report for the April 15 hearing.[7] According to the report, the grievance process was still underway and the Agency was in the process of verifying Christy's new address. The minute orders reflect the court's denial without prejudice of a request for an evidentiary hearing on the issue of relative placement.[8]

The Agency argues the report and minute orders, and the lack of an appeal from the April 15, 2010, order, show that any error in excluding evidence and not placing the children with Christy was harmless. The Agency also asserts the information in the record regarding the positive physical inspection of Christy's former home is no longer relevant.

Stephanie argues that granting the requested relief would perpetuate the juvenile court's error in admitting the Agency's reports without allowing her to cross-examine their author. Alternatively, Stephanie asserts this court

---

[6] Stephanie's counsel joined with Kurt's counsel.

[7] The Agency filed its request and motion the same day it filed its respondent's brief. The respondent's brief refers to the April 15 report and minutes. We disregard those references.

[8] The minute orders do not state who made the request.

should limit judicial notice to the existence of the April 15, 2010, findings and report and not consider their content.

We deny the request for judicial notice and motion to augment the record. The existing record reflects Christy's move from the home the Agency inspected. Whether the grievance process is still underway and whether the juvenile court is still excluding evidence regarding placement with Christy are not matters that would aid in our evaluation of the issues in this appeal.

## EXCLUSION OF EVIDENCE AND DENIAL OF PLACEMENT

■ Section 361.3 gives "preferential consideration" to placement requests by certain relatives upon the child's removal from the parents' physical custody at the dispositional hearing.[9] (§ 361.3, subds. (a), (c); *In re Lauren R.* (2007) 148 Cal.App.4th 841, 854 [56 Cal.Rptr.3d 151].) Before placing a child with a relative, the Agency must complete a Child Abuse Central Index check of the relative. (§§ 361.4, subd. (c), 309, subd. (d)(1); *In re S.W.* (2005) 131 Cal.App.4th 838 [32 Cal.Rptr.3d 192].) When the Agency deems a relative's home unsuitable due to a previous child welfare referral, "the juvenile court must exercise its independent judgment rather than merely review [the Agency]'s placement decision for an abuse of discretion."[10] (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1027, 1033 [111 Cal.Rptr.2d 243], citing § 361.3, subd. (a).)

■ Here, in excluding evidence needed to determine whether Christy's home was appropriate, the juvenile court failed to consider Stephanie's wishes or the children's rights. (§ 361.3, subd. (a)(2) ["In determining whether placement with a relative is appropriate, the . . . social worker and court shall consider . . . [¶] [t]he wishes of the parent . . . ."]; *In re Esperanza C., supra,* 165 Cal.App.4th at p. 1060 ["Placement with a suitable relative is presumptively in the child's best interest."].) The administrative grievance process available upon the Agency's rejection of a relative's home is designed to protect the relative's rights and interests. (See *In re Esperanza C., supra,* at p. 1059.) That process "does not necessarily safeguard the interests of the court, the child, the parent and the social worker in

---

[9] " 'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1).)

[10] In contrast, when a relative has a criminal history and the Agency denies a criminal records exemption to allow placement, the juvenile court reviews the denial for an abuse of discretion. (*In re Esperanza C., supra,* 165 Cal.App.4th at p. 1049.) In such a case the court does not have the authority to grant an exemption or place the child in the relative's home. (*Id.* at p. 1057; *In re S.W., supra,* 131 Cal.App.4th at pp. 848–852.) Christy has no criminal history.

the child's *prompt* placement in the home of an appropriate relative." (*Id.* at p. 1060.) Once a child is placed in the home of a nonrelative at the dispositional hearing, the relative placement preference does not arise again until "a new placement of the child must be made." (§ 361.3, subd. (d), quoted in *In re Lauren R., supra,* 148 Cal.App.4th at p. 854.) "[P]lacement of a child with a relative has the potential to alter the juvenile court's determination of the child's best interests and the appropriate permanency plan for that child, and may affect a parent's interest in his or her legal status with respect to the child." (*In re Esperanza C., supra,* at p. 1054.) For those reasons, two exceptions to the doctrine of exhaustion of administrative remedies apply here: "pursuit of an administrative remedy would result in irreparable harm [citations] [and] the administrative agency cannot grant an adequate remedy [citations] . . . ." (*Ogo Associates v. City of Torrance* (1974) 37 Cal.App.3d 830, 834 [112 Cal.Rptr. 761].) At the dispositional hearing, the social worker was unable to say when Christy's grievance procedure might be completed.[11] Postponing the juvenile court's review of the Agency's decision for an indefinite period pending completion of administrative proceedings would undermine judicial review.

Ultimately, the children's interest in prompt placement with a suitable relative precludes any unnecessary delay in the juvenile court's review of the Agency's determination Christy's home was unsuitable due to her child welfare history. We conclude the court abused its discretion by excluding evidence concerning the Agency's reasons for refusing to approve Christy's home. (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1135 [106 Cal.Rptr.3d 382].)

The court's abuse of discretion, however, does not mandate reversal. "A judgment shall not be reversed by reason of erroneous exclusion of evidence unless a miscarriage of justice is shown . . . ." (*In re Mark C.* (1992) 7 Cal.App.4th 433, 443–444 [8 Cal.Rptr.2d 856].) Here, there was no miscarriage of justice. Christy was living in a new home that had not been physically inspected. Thus, the children could not have been placed with her regardless of her child abuse history. The court's error in excluding evidence was harmless. (See *In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1122 [53 Cal.Rptr.3d 437].)

---

[11] Citing *In re Esperanza C., supra,* 165 Cal.App.4th 1042, the Agency concedes "that where administrative review is not timely completed after a relative has sought such review, then the juvenile court can review the matter under the abuse of discretion standard if requested." As noted above, *In re Esperanza C.* concerned a relative with a criminal history and is therefore inapposite. Moreover, the Agency does not expressly address the span of more than three months between the date Christy, Stephanie and Kurt requested placement with Christy and the date of the dispositional hearing.

## DISPOSITION

The judgment is affirmed.

Haller, Acting P. J., and McDonald, J., concurred.