Vicente N. **Rivera**, for himself and as president of Investment

---

Group International (I.G.I.),
Taiwan Harbour Engineering
Construction Company, Ltd.,
Chi Yung Enterprises Company, Ltd.,
Kuo's Construction Company, Ltd.,
and Chi Man Enterprises
Company, Ltd., doing business as
Taiwan Marine Group,
Plaintiffs/Appellants,

v.

Jesus M. **Guerrero**, Chairman,
Commonwealth Ports Authority,
and Samsung Engineering
and Construction Company,
Defendants/Appellees.
Appeal No. 93-015
Civil Action No. 93-0157
December 22, 1993

Argued and Submitted October 8, 1993

Counsel for appellants Vicente N. Rivera and Taiwan Marine Group: Reynaldo Yana, Saipan.

Counsel for appellee J.M. Guerrero: Stephen Nutting, Saipan.

Counsel for appellee Samsung Engineering & Construction Company: Douglas Cushnie, Saipan.

BEFORE: DELA CRUZ, Chief Justice, and VILLAGOMEZ and ATALIG, Justices.

VILLAGOMEZ, Justice:

██ This is an appeal by the plaintiffs, Vicente Rivera and Taiwan Marine Group (collectively "Rivera"), from the dismissal of their complaint. The trial court dismissed the complaint for lack of subject matter jurisdiction, for failure to state a claim upon which relief could be granted, and because there is no factual dispute that the rejection of Rivera's proposal by the Commonwealth Ports Authority (CPA) was neither arbitrary nor capricious.

We have jurisdiction over this appeal under the Commonwealth Judicial Reorganization Act of 1989.[1] We affirm the dismissal of Rivera's complaint on the ground that the Superior Court lacked jurisdiction.

### ISSUES AND STANDARD OF REVIEW

Rivera raises the following three issues for our review:

1. Whether the trial court erred in ruling that it lacked subject matter jurisdiction due to Rivera's failure to exhaust his administrative remedy.

2. Whether the trial court erred in ruling that the complaint failed to state a claim upon which relief could be granted with respect to Rivera's claim that his constitutional rights to due process and equal protection under

---

[1] See 1 CMC § 3102(a).

the law were violated by CPA.

3. Whether the trial court erred in ruling that CPA's rejection of Rivera's proposal was neither arbitrary nor capricious as a matter of law.

The first issue, as stated by Rivera, does not adequately or accurately reflect what actually happened at the administrative level. Rivera did not simply file a protest with CPA and then proceed to court for judicial review without exhausting his administrative remedy. Instead, he filed an *untimely* protest. Then, four days later, he abandoned his administrative protest and filed a separate action in court. Thus, the issue, more accurately stated, is whether Rivera's failure to file a timely protest with the CPA precludes judicial review of his complaint.

■■■ Because we affirm the dismissal based on lack of subject matter jurisdiction, we do not address the second and third issues.[2] Dismissals made pursuant to Com. R. Civ. P. 12(b)(1) are subject to de novo review.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

In response to a request for proposals published by the Commonwealth Ports Authority (CPA), Rivera submitted a proposal to serve as contractor for the Saipan Harbor Improvement Project ("Harbor Project"). Rivera's proposal was determined by CPA's contracting officer to be non-responsive to certain requirements set forth in the request for proposals, unclear in several respects, and five million dollars higher than the lowest responsive proposal.

CPA formally rejected Rivera's proposal on December 24, 1992, following the review by and advice of CPA consultants. On that day, Rivera received written notice from the CPA chairman, acting in his capacity as contracting officer, that Rivera's proposal had been rejected and that the CPA board of directors ("board") would pursue negotiations with the four companies that were deemed qualified to participate in the contract bidding. CPA, acting pursuant to its procurement regulations,

subsequently awarded the Harbor Project contract to Samsung Engineering and Construction Company ("Samsung"), which CPA determined to be the lowest responsive and responsible bidder.

Samsung and CPA executed a contract for the Harbor Project on January 28, 1993. That same day, CPA received Rivera's "Official and Formal Protest of Award of Contract for Improvement and Development of the Saipan Harbor, and Questionable/Illegal Conduct by the CPA," dated January 27, 1993. In his formal protest, Rivera requested that "negotiations be held and that [Rivera's] company will be included."[4]

Although the CPA procurement regulations provide that proposers such as Rivera may protest[5] the rejection of their proposals within ten days, Rivera did not submit his protest until thirty-four days after the rejection of his proposal. Then, instead of proceeding with his administrative protest, Rivera filed a complaint in the Superior Court on February 1, 1993. In his complaint, Rivera seeks only to have CPA's contract with Samsung declared void, and requests attorney's fees.

On February 2, 1993, CPA notified Rivera in writing that his letter of protest had been received, but would not be considered "a formal protest/grievance as it was not received [by CPA] within 10 days from the date [Rivera] received CPA's letter [of rejection] dated December 24, 1992."[6] CPA subsequently moved to dismiss Rivera's complaint in the Superior Court pursuant to Com. R. Civ. P. 12(b)(1), 12(b)(6), and 56(b). The trial court dismissed the complaint based on each of the three grounds asserted by CPA. Rivera timely appealed.

## ANALYSIS

CPA rejected Rivera's proposal on December 24,

---

[2] We note here that when the Superior Court determines that it has no subject matter jurisdiction and dismisses a complaint under Com. R. Civ. P. 12(b)(1), the court should proceed no further. *See United States v. 40.60 Acres of Land*, 483 F.2d 927, 928 (9th Cir. 1973).

[3] 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1350 (2d ed. 1990); *Aquino v. Tinian Cockfighting Bd.*, 3 N.M.I. 284, 291-92 (1992); *Seman v. Aldan*, 3 CR 152, 155 (D.N.M.I. 1987).

[4] Letter from Vicente N. Rivera, President, Investment Group International, to Jesus M. Guerrero, Board of Directors Chairman and Contracting Officer, Commonwealth Ports Authority (Jan. 27, 1993) *in* Supplemental Excerpts of Record of Appellees/Cross-Appellants at tab 5.

[5] The CPA regulations use the term "protest" to describe the first stage of the administrative appeal process established in its regulations. The protest serves as the first step in the overall process of administrative appeal. We use the words "protest" and "appeal" interchangeably for purposes of this opinion.

[6] Letter from Roman T. Tudela, Executive Director, Commonwealth Ports Authority, to Vicente N. Rivera, President, Investment Group International (Feb. 2, 1993).

81

1992. Rivera subsequently filed an untimely protest with CPA. He then filed the present action. For the following reasons, we affirm the dismissal of Rivera's complaint for lack of jurisdiction under Com. R. Civ. P. 12(b)(1). We base our decision on Rivera's failure to meet the deadline for filing a protest with CPA.

## A. The Effect of the Untimely Protest under CPA Regulations

■ CPA advised Rivera on February 2, 1993, that his formal letter of protest would not be considered because it was not filed within ten days of CPA's rejection of Rivera's proposal. The trial court likewise correctly found that Rivera's protest was untimely.[7]

■ The Commonwealth Ports Authority Act ("the Act")[8] provides the standards for contracting and bidding.[9] It also empowers the CPA "[t]o adopt and enforce rules and regulations for the orderly, safe, and sanitary operation of its ports."[10]

Under regulations promulgated by CPA, "[a]ny actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation or award of a contract may protest to the Executive Director."[11] Protests must be received in writing by the executive director within ten days after the aggrieved person "knows or should have known of the facts giving rise thereto."[12]

The executive director is obligated to consider all protests or objections, whether submitted before or after an award of a contract.[13] Within thirty days, the executive director must decide the protest or certify that the

complexity of the matter requires a longer time.[14] An appeal from the executive director's decision then may be taken, "to the appeal committee . . . provided that the party taking the appeal has first submitted a written protest to the Executive Director as provided in section 10.1 . . . and the Executive Director has denied the protest or has failed to act on the protest within the time provided for in section 10.1(1)(c)."[15] The appeal committee must receive the written appeal within ten days after the appellant receives the Executive Director's decision.[16]

On December 24, 1992, Rivera received written notice of the contracting officer's rejection of his proposal. He had ten days within which to file a written objection to that decision. However, as the trial court found, Rivera mailed his formal protest on January 27, 1993, long after the ten days had expired.

■ The time limit for filing an intra-agency appeal is mandatory and jurisdictional.[17] The protest was thus barred from administrative consideration.

## B. The Effect of the Untimely Administrative Protest on the Court's Jurisdiction

■ A court lacks jurisdiction to review administrative decisions not timely appealed during the administrative process.[18] Thus, Rivera's untimely protest bars not only further administrative consideration, but also judicial review.

Rivera contends, however, that he need not have exhausted his administrative remedies, a process which would have begun with a timely filed protest, because exhaustion would have been futile. He advances four arguments in support of his position.

First, Rivera asserts that CPA has no power to declare the CPA-Samsung contract void because CPA

---

[7] Findings of Fact ¶ 5, *Rivera v. Guerrero*, Civ. No. 93-0157 (N.M.I. Super. Ct. Mar. 15, 1993) (order). An agency's dismissal of an intra-agency appeal for failure to file in a timely fashion does not bar a reviewing court from examining the timeliness of the appeal. *See Smith v. Prokop*, 496 F. Supp. 861, 863 (N.D. Ohio 1980).

[8] 2 CMC § 2121 et seq.

[9] 2 CMC § 2132.

[10] 2 CMC § 2122(j).

[11] Commonwealth Ports Authority Procurement Rules and Regulations [hereinafter "CPA Regulations"] § 10.1(1)(a), 10 Com. Reg. 5642-43 (Aug. 15, 1988).

[12] *Id.*

[13] *Id.*

[14] *Id.* § 10.1(1)(c), 10 Com. Reg. 5643.

[15] *Id.* § 10.2(1), 10 Com. Reg. 5645.

[16] *Id.* § 10.2(3), 10 Com. Reg. 5645.

[17] *See Nansay Micronesia Corp. v. Govendo*, 3 N.M.I. 12, 18-19 (1992) (Coastal Resources Management board lacked jurisdiction to hear untimely appeal of agency's permit decision); *see also Da Cruz v. Immigration & Naturalization Serv.*, 4 F.3d 721, 722 (9th Cir. 1993).

[18] *See Nansay*, 3 N.M.I. at 19-20; *see also Da Cruz*, 4 F.3d at 722-23 (court lacked jurisdiction to review administrative law judge's decision because agency did not timely appeal to its own board of appeals).

itself is a party to the contract. This argument contradicts the express provisions of the CPA regulations.

The CPA regulations provide that if, *before* CPA awards a contract, it receives a protest against award of the contract, then CPA must: (1) withhold the award pending disposition of the protest, unless a limited exception applies,[19] and (2) cancel or revise the solicitation or proposed award if CPA determines that the solicitation or proposed award violates a law or regulation.[20]

If CPA receives a protest challenging a contract *after* it has been awarded, CPA may: (1) ratify and affirm the contract or terminate it and compensate the awardee, if the latter has not acted in bad faith or fraudulently,[21] or (2) declare the contract null and void, or ratify and affirm the contract and seek damages as appropriate, if the person awarded the contract has acted fraudulently or in bad faith.[22] This survey of CPA regulations makes it abundantly clear that CPA has not only the authority, but also the duty, to consider and act upon protests and requests that are properly filed.

Second, Rivera argues that CPA cannot be expected to invalidate its own illegal action. Again, this argument is unpersuasive because CPA regulations require that the agency determine whether it has violated a law or regulation and, if so, that it cancel or revise the solicitation, proposed award, or contract award.[23] We have to presume that CPA would follow this regulatory directive and invalidate any of its own actions that it finds to be illegal. Only if it fails to do so may judicial review follow.

Third, Rivera claims that his allegations that his right to due process and equal protection raise constitutional issues which only a court may adjudicate. Rivera argues that he need not, therefore, have presented his grievances to CPA. This argument has no merit.

 As a general rule, the mere presence of a constitutional claim does not bar operation of the doctrine of exhaustion of administrative remedies.[24] Courts have made exceptions to the exhaustion doctrine in instances where a plaintiff brings constitutional challenges *to the validity of a statute or ordinance* under which the agency acts, and *demonstrates positively* what the administrative decision would be, or that the administrative remedy would be inadequate or irreparably harmful, in his or her particular case.[25] In this instance, however, Rivera is not challenging the constitutionality of the Act or the CPA regulations, nor has he demonstrated positively that following the procedures required here would afford him inadequate relief or cause him irreparable harm. Thus, the constitutional claims raised by Rivera are not of the type which fall within the exception to the exhaustion rule.

Rivera cites *Torres v. Marianas Pub. Land Corp.*, 3 N.M.I. 484 (1993), for the proposition that one who is aggrieved by an agency's action need not exhaust his or her administrative remedies where the person believes that his or her constitutional rights have been infringed by the agency. *Torres*, however, does not stand for that proposition. In *Torres*, a citizen of the Northern Marianas (Torres) sued a private company (Nakamoto Enterprises) to prevent it from violating his right to a clean and healthful public environment, as guaranteed by N.M.I. Const. art. I, § 9.[26] With respect to that cause of action, Torres, unlike Rivera, was not aggrieved by an agency action.

In *Torres*, the plaintiff alleged that the construction of a large hotel in a particular area of Saipan, under the terms of a lease agreement between Nakamoto Enterprises and the Marianas Public Land Corporation, would adversely impact the environment and violate his constitutional right to a clean and healthful public environment.[27] The defendants in *Torres* urged the court to dismiss the action for lack of subject matter jurisdiction on the ground that the plaintiff had not exhausted his administrative remedies by waiting until the Office of Coastal Resources Management ("CRM"), which was not a party to the lawsuit, decided whether to issue a permit for the hotel. The trial court dismissed for failure to exhaust.

---

[19] CPA Regulations, *supra* note 11, § 10.1(2)-(5), 10 Com. Reg. 5644, 5646.

[20] *Id.* § 10.3(1), 10 Com. Reg. 5648.

[21] *Id.* § 10.3(2)(a), 10 Com. Reg. 5648.

[22] *Id.* § 10.3(2)(b), 10 Com. Reg. 5648.

[23] *See id.* § 10.3, 10 Com. Reg. 5648.

[24] *See, e.g., Aircraft & Diesel Equip. Corp. v. Hirsch*, 331 U.S. 752, 67 S. Ct. 1493, 91 L. Ed. 796 (1947).

[25] *See, e.g., American Fed. of Gov't Employees v. Acree*, 475 F.2d 1289, 1292 (D.C.Cir. 1973); *Ogo Ass'n. v. City of Torrance*, 112 Cal. Rptr. 761, 763 (Ct. App. 1974).

[26] This constitutional guarantee provides, in pertinent part, "[e]ach person has a right to a clean and healthful public environment in all areas, including the land, air, and water." N.M.I. Const. art. I, § 9, cl. 1.

[27] *Torres v. Marianas Pub. Land Corp.*, 3 N.M.I. 484, 486-87 (1993).

On appeal, we determined that since N.M.I. Const. art. I, § 9 is self-executing,[28] the plaintiff did not have to wait for a ruling from CRM, the non-party agency. Neither a statute nor regulations required that Torres wait for such a ruling. Following our earlier ruling in *Govendo v. Marianas Pub. Land Corp.*, 2 N.M.I. 482 (1992), that a strong public policy supports strict enforcement of rights secured by N.M.I. Const. art. I, § 9,[29] we held in *Torres* that the plaintiff's cause of action was viable.[30]

In the present case, Rivera alleges that the *agency's action* in awarding the contract to Samsung violated his rights to due process and equal protection of the law. The CPA rules and regulations provide for claims such as this to undergo review at the administrative level. However, Rivera failed to timely lodge his administrative appeal, and thereby precluded CPA from considering the merits of his protest. His case is distinguishable from *Torres*.

Fourth, Rivera argues that even if he is required to exhaust his administrative remedies, he could not have executed his administrative appeal because his bid was rejected by J.M. Guerrero, the board chairman and contracting officer, who alone could not make the rejection decision. Rivera asserts that only the CPA board is authorized to act on a proposal and, since the board never rejected his bid, there is no action by the board from which Rivera may appeal. This argument lacks merit in light of express CPA regulations.[31]

Even if Guerrero lacked the authority to reject a proposal, Rivera incorrectly assumes that CPA regulations permit a party to protest only board actions. The regulations expressly provide that "[a]ny . . . bidder . . . who is aggrieved in connection with the solicitation or award of a contract may protest to the Executive Director."[32] If Rivera's bid was improperly rejected because

the rejection should have been made by the board, then Rivera became an "aggrieved" party and he should have timely protested the rejection.

If Rivera had submitted his protest within the requisite time period, it would have been reviewed by the executive director, whose decision in turn would have been subject to review by the appeal committee. Rivera then could have proceeded to court for review of the committee's decision. Having failed to timely appeal administratively, he may not appeal now to the court.

## C. Judicial Review under the Commonwealth Administrative Procedure Act (APA)[33]

 Although the parties did not raise or discuss the issue of finality under the APA, we note that the APA provides for judicial review of "[a]gency action made reviewable by statute and *final* agency action for which there is no other adequate remedy in a court."[34] An aggrieved party may seek such review within thirty days after the agency issues its final decision about the matter in question.[35]

In the instant case, CPA's December 24, 1992, notice to Rivera of the rejection of his proposal might or might not be deemed final agency action.[36] If it was a non-final CPA action, then Rivera could not seek review under the APA, which authorizes review only of final agency decisions.

 If the December 24, 1992, rejection was a final CPA action, then Rivera had thirty days within which to seek judicial review of the rejection. He would not have had to exhaust his administrative remedy under such circumstances.[37] Rivera, however, did not file his action

---

[28] *See Govendo v. Marianas Pub. Land Corp.*, 2 N.M.I. 482, 502 n.16 (1992).

[29] *See id.* 2 N.M.I. at 501-02.

[30] *See Torres*, 3 N.M.I. at 492.

[31] CPA formally amended its procurement rules and regulations to authorize the chairman of the board to negotiate and execute a contract for the Saipan Harbor Improvement Project. *See* Commonwealth Ports Authority, Public Notice, Commonwealth Ports Authority Emergency Amendment to Section 2.3(1) of the Commonwealth Ports Authority's Procurement Rules and Regulations, 14 Com. Reg. 9769-75 (Oct. 15, 1992).

[32] CPA Regulations, *supra* note 11, § 10.1(1)(a), 10 Com. Reg. 5642-43.

[33] 1 CMC § 9101 et seq.

[34] *See* 1 CMC § 9112(d) (emphasis added).

[35] The APA specifies that, unless otherwise precluded by statute, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action, *is entitled* to judicial review of the action within 30 days thereafter in the Commonwealth Trial Court." *See* 1 CMC § 9112(a) -(b) (emphasis added).

[36] We raise this issue without deciding it here.

[37] Parties seeking review under the APA must first exhaust all intra-agency appeals expressly mandated either by statute or by the agency's regulations. Such exhaustion requirements create jurisdictional prerequisites to proceeding to court. *See Montgomery v. Rumsfeld*, 572 F.2d 250, 252-53 (9th Cir. 1978); *Lopez v. Civil Serv. Comm'n*, 283 Cal. Rptr. 447, 449-

in court until thirty-nine days after he received notice of the rejection of his proposal. Consequently, even if he could have sought judicial review of the rejection of his proposal as final agency action under the APA, Rivera's court action was untimely.

## CONCLUSION

For the above reasons, the dismissal of Rivera's complaint for lack of subject matter jurisdiction is hereby **AFFIRMED**.

---

51 (Ct. App. 1991). Where no statute or regulation mandates exhaustion, a court may proceed to review the agency's final decision under the APA, and may not impose additional exhaustion requirements. *See Darby v. Cisneros*, 509 U.S. __, 113 S. Ct. 2539, 2445, 125 L. Ed. 2d 113, 123 (1993).